Joyce DREILING, Plaintiff,

v.

John MACIUSZEK, Jr., et
al., etc., Defendants.

COMMERCIAL UNION INSURANCE
COMPANIES, Plaintiff,

v.

John J. MACIUSZEK, Jr., Defendant.

Nos. 91 C 2287, 91 C 3970.

United States District Court,
N.D. Illinois, E.D.

Nov. 25, 1991.

Michael Mendelson, Gerald Perlin, Chicago, Ill., for Joyce Dreiling.

Thomas Hayes, Chicago, Ill., and John Halpern, St. Louis, Mo., for Commercial Union.

Leo McGonigal, Chicago, Ill., for Advi and Theresa Memisovski.

Dennis Ferraro, Chicago, Ill., for John J. Maciuszek, Jr.

Anthony Tunney, Chicago, Ill., for Eugene Lewis d/b/a Christiansen Ins. Agency.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

These actions (combined on grounds of relatedness under this District Court's General Rule ("GR") 2.31) have very recently been reassigned to this Court's calendar on the departure of its former colleague Honorable Nicholas Bua to resume the practice of law.[1] Examination of the files has disclosed a set of fully-briefed motions for summary judgment under Fed.R.Civ.P. ("Rule") 56 that are potentially dispositive as to the higher-numbered case and will unquestionably have a major practical im-

---

1. In fact only the lower-numbered case was initially transferred to this Court's calendar, though Judge Bua had earlier been the recipient of the higher-numbered case via a GR 2.31 reassignment. Whether or not the oversight in assigning 91 C 3970 together with 91 C 2287 was somehow related to the earlier errors that had taken place in connection with the treatment of still another case—91 C 4027—as referred to later in the text, the matter has now been corrected.

pact (though they are not fully dispositive) as to the lower-numbered case. This opinion addresses those motions.

### Facts [2]

Both actions are properly in the federal court system on diversity-of-citizenship grounds (there is no question that much more than the jurisdictional floor of $50,000 is at issue in each) and under admiralty jurisdiction as well. Here are the parties and their citizenship:

1. In 91 C 2287, California citizen Joyce Dreiling ("Dreiling") originally sued Illinois citizens John Maciuszek ("Maciuszek," Dreiling's fiance) and Eugene Lewis ("Lewis," a sole proprietor doing business as Christiansen Insurance Agency).

2. In 91 C 3970, Commercial Union Insurance Companies, a Massachusetts corporation with its principal place of business in that state, sued Maciuszek for a declaration of noncoverage of the incident at issue in 91 C 2287 under the insurance policy that Commercial Union had issued to Maciuszek a few years earlier.[3]

In addition to that original cast of characters, Advi Memisovski and his wife Theresa (collectively "Memisovskis") have intervened as plaintiffs in 91 C 2287 and as defendants in 91 C 3970. Although that intervention (they are Illinois citizens) would create subject matter jurisdictional problems by the destruction of total diversity in 91 C 2287, the subject matter of the

litigation—an accident involving a vessel on Lake Michigan, a navigable body of water—is within the admiralty jurisdiction of the federal courts irrespective of citizenship.

Before this opinion turns to the factual background underlying the lawsuits, it is necessary to unsnarl a procedural tangle that has also been revealed by this Court's examination of the court files in all three cases. For that purpose this Court has had to devise something like the reverse of Alexander the Great's fabled drastic surgery on the Gordian knot. What this District Court's files reflect is this:

1. Originally 91 C 4027 (Maciuszek's declaratory judgment action against Commercial Union, the mirror image of Commercial Union's declaratory judgment action that had been filed against Maciuszek just one day earlier as 91 C 3970) was assigned to the calendar of another of this Court's colleagues, Honorable James Alesia.

2. After 91 C 4027 had reached issue by the filing of Commercial Union's Answer, Judge Duff properly obtained reassignment of that case to his calendar on grounds of relatedness to Commercial Union's 91 C 3970 lawsuit (which was then on Judge Duff's calendar). That reassignment by this District Court's Executive Committee took place on July 29.

3. On August 2 Judge Duff quite understandably issued an oral ruling dismissing 91 C 4027, for the case plainly

---

**2.** What is set out here is an outline—all that is necessary—of the facts relevant to the currently considered motions. Because the motions seek summary judgment under Fed.R.Civ.P. ("Rule") 56, this opinion of course applies the familiar principles that impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable"—in the light most favorable to the nonmovant (*Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991) and cases cited there). Where as here cross motions are involved, that principle thus demands a dual perspective—one that this Court has sometimes described as Janus-like—that sometimes causes the denial of both motions. Fortunately that

has not occurred here, because the few factual differences that are referred to in the text are not material (that is, outcome-determinative—*Shlay v. Montgomery*, 802 F.2d 918, 920 (7th Cir.1986)).

**3.** Just a day later, unaware of Commercial Union's filing of 91 C 3970, Maciuszek sued Commercial Union in 91 C 4027, a declaratory judgment action to confirm that Maciuszek *was* covered under that policy. Dreiling later intervened as an additional party plaintiff. This Court's colleague Honorable Brian Barnett Duff (to whom both 91 C 3970 and 91 C 4027 were then assigned) promptly dismissed the later action this past August 2, obviously because it was wholly duplicative of 91 C 3970. More of this a bit later.

presented nothing for decision beyond the issues that were already posed by 91 C 3970.

4. On August 8 Judge Bua—obviously unaware of that recent dismissal—requested reassignment of *both* 91 C 3970 and 91 C 4027 to his calendar as being related to the underlying personal injury action against Maciuszek (91 C 2287) then pending on his own calendar. On that same day an order of reassignment was entered in both those cases: the live 91 C 3970 and the already-defunct 91 C 4027. Judge Bua promptly proceeded to order all three (sic) cases consolidated.

5. It seems that by that time no one except the Clerk's Office knew what was going on. In still another bizarre development, Dreiling later requested and on September 19 Judge Bua granted her leave to intervene as a co-plaintiff in 91 C 4027—the no-longer-pending case! And all the summary judgment motions and briefing since then have proceeded on the false premise that all three cases (rather than the two actual survivors) were still pending—with most if not all of the parties' filings bearing the captions of all three cases.

6. As already indicated, Memisovskis have intervened in the right case—as added defendants in Commercial Union's declaratory judgment action (91 C 3970).

What is without question in all this is that *everyone* wishes to be bound by the decision in the cross-motions for summary judgment that have been presented in the declaratory judgment proceedings (which at this point, as for some months past, means *only* 91 C 3970). It is equally clear that there is no point in reviving 91 C 4027 even if that could be done: Its August 2 dismissal has months ago become a final and non-reviewable order. What this Court therefore instead orders is simply this:

1. Dreiling is also made a co-*defendant* (as Memisovskis already are) in 91 C 3970. All of her submissions in the consolidated proceedings—both offen-

sively and defensively in the cross-motions for summary judgment—are therefore deemed as having been filed in that case rather than in 91 C 4027, which had actually been terminated even before the first brief was filed on the summary judgment motions.

2. Commercial Union's filings in opposition to Dreiling's are also deemed filed solely in 91 C 3970.

That properly pits Dreiling (as well as Maciuszek and Memisovskis) against Commercial Union in cross-motions that are ripe for decision in 91 C 3970, which as already stated is the only pending declaratory judgment action as to the coverage or noncoverage by Commercial Union's Policy of the accident in which Dreiling and Memisovskis were injured.

As just suggested, both still-pending actions revolve around a June 30, 1990 collision in which Maciuszek's 1990 Ebbtide Cuddy motorboat (the "Ebbtide Cuddy") collided with a breakwater in Lake Michigan, injuring passengers Dreiling and Memisovskis. What controls the declaratory judgment action to which Commercial Union is a party is the question whether its Harbormaster Policy No. CW U79 20 60 (the "Policy") covers Maciuszek for any liability that he may sustain due to the personal injuries that are asserted against him by Dreiling and Memisovskis in 91 C 2287.

When the Policy was originally issued Maciuszek had owned a different motorboat described as a 1978 Four Winds (the "Four Winds"), which he had purchased as a used vessel from his father. Acquaintances who kept boats at the same marina had recommended that Maciuszek confer with independent insurance agent Lewis, who does a substantial amount of business in procuring insurance for his customers who own private pleasure craft. After discussing with Maciuszek all of the relevant facts about the Four Winds, including the locations where Maciuszek wanted to use it (Maciuszek told Lewis that would be only on the Illinois and Kankakee Rivers),[4] Lew-

---

**4.** As might be expected, premiums for both physical damage and liability coverage involv-

ing boats are a function not only of the value of the insured vessel but also of where the owner

is obtained and advised Maciuszek of three quotations from insurance companies that were willing to underwrite the coverage. Commercial Union was the low bidder.

Maciuszek then asked Lewis to purchase insurance for the Four Winds. Lewis filled out the necessary application based on the information that Maciuszek had given him, including the directive as to the limited area where the Four Winds would be used. In that latter respect, the combined Binder/Application form (a photocopy of which is attached as Ex. A to this opinion) contained six alternative choices as to the permitted "Navigation Territory," only one of which was to be checked:

- ☐ U.S. COASTAL ATLANTIC & INLAND WATERS—EASTPORT TO CAPE HATTERAS
- ☐ U.S. COASTAL ATLANTIC & INLAND WATERS—CAPE HATTERAS TO KEY WEST
- ☐ U.S. GULF & INLAND WATERS—KEY WEST TO BROWNSVILLE
- ☐ U.S. COASTAL PACIFIC & INLAND WATERS
- ☐ GREAT LAKES & INLAND WATERS
- ☐ INLAND WATERS

In addition to filling out all the other required information, Lewis placed an "X" in the box for "INLAND WATERS," which was unquestionably the right category for Maciuszek's stated use. There is a difference in the testimony as to whether Lewis sent the Binder/Application to Maciuszek for his signature—Lewis says "yes," while Maciuszek denies ever having received it (though *someone* signed his name to the form and though he certainly signed the check for the premium, which Lewis sent to Commercial Union along with the Binder/Application)—but as explained later that conflict is not material (that is, the legal result is the same whether or not Maciuszek ever saw the form).

In all events the form *was* transmitted to Commercial Union, which issued the Policy based on the Binder/Application. Like many other kinds of insurance policies, the Policy comprises (1) a printed form that describes the nature of the coverage afforded and the numerous terms and conditions of that coverage and (2) a Coverage Page that (like the Binder/Application) contains spaces for filling in the particulars of the specific policy involved—in this instance the insured's name, the description of the insured property, the "Navigation Limits" (which as already indicated represent the critical factor for these cases), the basic coverages afforded, any applicable credits, any optional coverages and the premium summary. General Provisions § 1A of the Policy specifies (emphasis added):

A. This policy applies only to accidents and losses which occur:

(1) during the policy period as shown on the Coverage Page; and

(2) while insured property is:

(a) *afloat within the Navigation Limits specified on the Coverage Page;*

(b) being transported on land; or

(c) in storage.

For some unexplained reason the Coverage Page (which is attached as Ex. B to this opinion[5]) did not precisely echo the Binder/Application in listing the options available for designating Navigation Limits (the category corresponding to "Navigation Territory" on the Binder/Application). Here are the six categories on the Coverage Page:

- ☐ COASTAL ATLANTIC & INLAND WATERS Eastport to Cape Hatteras—U.S. Waters
- ☐ COASTAL PACIFIC & INLAND WATERS—U.S. WATERS

---

plans to use it. If a boat is going to be operated on the Great Lakes, the owner must pay premiums substantially higher than those covering operations only on rivers—about 30% more.

**5.** As is evident from Ex. B, it is a photocopy of the form after it was later revised by handwrit-

ten interlineations to reflect the replacement of the Four Winds by the Ebbtide Cuddy as the "insured property." But what this lawsuit is all about is that *no* change was made in the Navigation Limits, for which purpose Ex. B accurately reflects how the form was completed.

☐ COASTAL ATLANTIC & INLAND WATERS Cape Hatteras to Key West—U.S. Waters

☐ INLAND WATERS

☐ COASTAL GULF & INLAND WATERS Key West to Brownsville—U.S. Waters

☐ GREAT LAKES & TRIBUTARIES Not East of Quebec, Canada

As is obvious, five of the six listings mirrored those in the Binder/Application, although with the most minor reordering of words. As for the sixth, "GREAT LAKES & TRIBUTARIES Not East of Quebec, Canada" was listed in place of the Binder/Application's "GREAT LAKES & INLAND WATERS." In any event, the Coverage Page conformed precisely to the Binder/Application in placing an "X" in the box for "INLAND WATERS."

In April 1990 (shortly after the one-year-term Policy had been renewed at its first anniversary date) Maciuszek told Lewis that he was buying a new boat (the Ebbtide Cuddy) and asked Lewis to obtain insurance for that new vessel. Again their recollection differs as to whether Maciuszek also told Lewis that he intended to operate the Ebbtide Cuddy on Lake Michigan (a factual issue that could be resolved, if it were necessary to do so, only at trial). To decide the coverage issue in Commercial Union's favor—the result that is ultimately reached here—this opinion must, and therefore does, credit Maciuszek's version that he *did* tell Lewis about the intended Lake Michigan operation.

In any event Lewis again obtained more than one quote for the coverage of the Ebbtide Cuddy, this time from two companies. Again Commercial Union's was the more favorable lower quotation, and again the insurance coverage was ordered from it (this time via an endorsement to the Policy, deleting the Four Winds and adding the Ebbtide Cuddy instead).

What is not disputed is that Lewis did not ask *Commercial Union* to revise the Policy's coverage to elect the "Great Lakes & Tributaries" coverage. Accordingly the only amendment that Commercial Union made to the Policy was the one mentioned in the preceding paragraph, simply replacing the Four Winds with the newer and more expensive Ebbtide Cuddy as the "insured property" (thus requiring an additional premium). And because the ensuing accident actually took place on Lake Michigan, Commercial Union can disclaim coverage only if:

1. Lewis was Maciuszek's agent and not Commercial Union's in obtaining the coverage. If it were otherwise, Maciuszek's claimed statement to Lewis that he wanted broader coverage as to the Navigation Limits, which this Court must credit arguendo for purposes of Commercial Union's motion, would also be treated as an effective notice to Commercial Union.

2. Navigation Limits that are specified in the Policy as "INLAND WATERS" do not include any of the Great Lakes, such as Lake Michigan.

### Lewis' Status

█ As already stated, Maciuszek and not Commercial Union originally came to Lewis, who carries the label of "independent agent." As a matter of common sense, Lewis' obtaining of competitive bids from three insurers and his recommendation of the lowest of those to Maciuszek is certainly reflective of his serving as *Maciuszek's* agent and not Commercial Union's—after all, because by definition the agency relationship correlates with fiduciary responsibilities, Lewis could not simultaneously seek out Commercial Union's competitors with a view to placing the business with them if they came up with more favorable quotations, without necessarily creating a conflict of interest with his obligation of undivided loyalty to Commercial Union (a problem that is not posed when Lewis is properly understood as an *independent* agent—actually as Maciuszek's agent trying to get the best available deal for him).

Nothing in the evidence, or in reasonable inferences that might be drawn from the evidence, suggests an agency relationship between Lewis as agent and *Commercial Union* as his principal (and indeed at his

deposition Lewis conceded that he was Maciuszek's agent). Because it is unquestioned factually that Lewis did not ask or tell Commercial Union of Maciuszek's claimed desire to expand the navigational use of the newly-acquired vessel to Lake Michigan, that claimed statement to Lewis becomes nonmaterial (that is, it is non-outcome-determinative) in factual terms.

And the law in this area matches the facts. Commercial Union marshals a number of cases for the proposition that under maritime law an insurance man in Lewis' position, who obtains insurance for the boatowner in the manner that he did, acts as the agent for the insured (here Maciuszek) and *not* for the underwriter (here Commercial Union). Those cases are almost all of a certain vintage and none is from this jurisdiction, though to be sure they contain some pretty strong language—such as in *Connecticut Fire Ins. Co. v. Davison Chemical Corp.*, 54 F.Supp. 2, 6 (D.Md. 1944):

> Marine insurance is such a specialty that the use of brokers by vessel owners is not only very general but almost necessary for the benefit of the insured owners, and in procuring the insurance and dealing with underwriters the broker is the agent of the vessel owners.

Even though the cases that have been adduced by Commercial Union are merely instructive and persuasive rather than binding on this Court, the fact is that *none* of the parties who seek to hold Commercial Union liable (Maciuszek, Dreiling or Memisovskis) provides any authority going the other way. But the most instructive (as well as most recent) authority is one that this Court rather than the litigants has located, *Lien Ho Hsing Steel Enterprise Co. v. Weihtag*, 738 F.2d 1455, 1458 (9th Cir.1984) (numerous citations, including some advanced by Commercial Union, omitted):

> Marine insurance brokers are technically agents of the assured, even though they are compensated by commissions deducted from the underwriters' premiums, and they act as intermediaries both in placing the risk and handling claims.

Although it is the generally accepted custom and usage for marine underwriters to deal with insurance brokers as agents of the insured, this practice was not established by an act of Congress nor has it risen to the stature of a judicially established federal admiralty rule. In the absence of federal admiralty law on the issue, the law of the state with the greatest interest in the issue controls. *Wilburn Boat Co. v. Fireman's Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).

Thus the trail properly leads to Illinois law, the alternative authority that is relied on by Commercial Union. And in that respect the rule is crystal-clear: *As a matter of law* Lewis was indeed Maciuszek's agent and not Commercial Union's. To that end it is necessary only to recall the facts already recited and to match them to the opinion in *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 264–65 (7th Cir.1986) (again numerous citations and footnote omitted), where our Court of Appeals reached an identical conclusion under circumstances less favorable to the insurer than those presented here:

> Although the question whether an insurance broker is the agent of the insured or the insurer is generally one of fact, when the evidence clearly shows that the broker is the agent of the insured, it becomes a matter of law.

The Illinois courts have defined an insurance broker as:

> [O]ne who procures insurance and acts as middleman between the insured and the insurer, and solicits insurance business from the public under no employment from any special company, but, having secured an order, places the insurance with the company selected by the insured, or, in the absence of any selection by him, with the company selected by such broker.

An insurance agent, on the other hand, has a fixed and permanent relationship to an insurance company that the agent represents and has certain duties and allegiances to that company. Whether a

person is an agent or a broker is determined by his or her acts.

Some of the Illinois appellate courts have applied four criteria in determining whether an intermediary is an agent or a broker: (1) who called the intermediary into action; (2) who controls its actions; (3) who pays it; and (4) whose interests does it represent.

Accord, *American Ins. Corp. v. Sederes*, 807 F.2d 1402, 1404–05 (7th Cir.1986), repeating almost verbatim the just-quoted language and approving a determination that the use of the term "insurance agent" does *not* make the party placing the insurance the agent of the insurer.

In sum, this Court concludes as a matter of law that Lewis was not Commercial Union's agent but Maciuszek's. That conclusion has double consequences. First, any knowledge that Lewis might have had that Maciuszek wanted Lake Michigan coverage (something merely assumed for current purposes, even though it has not been proved) is not ascribed to Commercial Union (*American Ins.*, 807 F.2d at 1406). Second, Lewis' knowledge of the Policy's limitations—most importantly, of the restrictions on its coverage—is laid at Maciuszek's door even if that knowledge was not specifically communicated to him by Lewis (see, e.g., *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 122 (2d Cir. 1990); *All States Trailer Co. v. American Ins. Co.*, 234 F.2d 783, 786 (7th Cir.1956)).

### Meaning of the Policy

That set of consequences sets the stage for the ultimate inquiry: whether the Navigation Limits under the Policy even after Maciuszek had acquired the Ebbtide Cubby did or did not embrace operation of that replacement vessel on the Great Lakes. If that question is answered "yes," Commercial Union is bound to defend against, and ultimately to bear any liability for, Dreiling's and Memisovskis' claims

against Maciuszek that stem from the boat's June 30, 1990 collision with the breakwater in Lake Michigan. If the answer is "no," Commercial Union has no such obligation. And if the third alternative applies—that is, if the answer depends on whose version of different facts is accepted—all of the present summary judgment motions must be denied.

From the preceding section of this opinion it is plain that the actual terms of the Policy—more specifically its "INLAND WATERS" navigational coverage—continued to control after the Four Winds was replaced. Maciuszek's request to Lewis (if any was in fact made) to expand that coverage when Maciuszek bought the Ebbtide Cuddy [6] was never transmitted to Commercial Union and, of course, was thus never the subject of a Policy modification. Thus the question remains the meaning of the *original* Navigation Limits under the Policy.

Moreover, that issue is not colored in any way by what Maciuszek may have *thought* that the Policy meant. Indeed, his own testimony (1) that he did not even see the Binder/Application, (2) that what purported to be his signature on that document was not his and (3) that he also never received a copy of the Policy means that he cannot claim *reliance* on his own understanding of the Policy (for by definition he had no understanding of the actual language used).

Maciuszek himself has taken no position and has filed no submissions on the pending summary judgment motions—only Dreiling and Memisovskis have done so. And their position on the Policy's meaning is bizarre indeed. Each points in her or their summary judgment memorandum (Dreiling's filed on September 27 and Memisovskis' filed on October 2) to the usage of the term "inland waters" in the World Book and Collier's Encyclopedias, in a Time–Life Book, in a federal statute or two

---

**6.** It is really inaccurate to speak of Maciuszek's claimed request in that way—it will be remembered that he claims never to have seen either the Binder/Application or the Policy, so that he assertedly did not *know* the original coverage as to Navigation Limits. More precisely the claim is that Maciuszek told Lewis of the contemplated change in use, which *Lewis* knew would have required an expansion in the Policy's coverage.

and in some old cases—but never in what is the only *right* place: in the contract itself and its related documents. Dreiling's memorandum in support of her own summary judgment motion goes so far as to urge that this Court should somehow take judicial notice that Lake Michigan is an "inland waterway" as an "adjudicative fact" because the term has a fixed and immutable meaning based on those outside sources (Mem. 2–4), that "[a]s a matter of federal law, Lake Michigan is an 'inland waterway'" (*id.* at 4) and that because "Commercial Union is presumed to know the law" (*id.*) it is bound by such usage.

All of that is of course absurd. Insurance contracts are after all *contracts*, with the drafters of the documents able (like patentees in their own patent applications) to serve as their own lexicographers. If for example a contracting party wanted to use the word "apple" in a contract to include "tomato," and if the party effectively reflected that intention in an appropriate way, that party would be entirely free to do so.[7] And the fact that someone else who was unaware of that special usage, but who simply heard the word "apple," would not understand that "tomato" was also meant to be included (understandably, because it is not normally spoken of as an apple) would not make the slightest difference to the validity of that meaning in contractual terms.

This opinion has just referred to such contractual intentions as being "effectively reflected." For that purpose it is well established that the court construing the contract may resort not only to its internal language but also to "any evidence that sheds light upon the intentions of the parties, including the situation of the parties, the purpose of the contract, and the circumstances surrounding the formation of the contract" (*Chicago Board Options Exchange, Inc. v. Connecticut General Life Ins. Co.*, 713 F.2d 254, 257–58 (7th Cir.1983) ("*CBOE*")). And though *CBOE* speaks of that principle in terms of "construing an ambiguous contract," it surely embraces the kind of situation that is at issue here whether or not "INLAND WATERS" might be viewed as an ambiguous term.

In this instance the contractual environment begins with Maciuszek's directive to Lewis that he wanted to use his original boat, the Four Winds, *only* on the two rivers (the Illinois and the Kankakee) that he had mentioned. With the six alternative areas of coverage that were available from Commercial Union (and with a lower premium charged for such limited use), Lewis properly filled out the Binder/Application as applying only to "INLAND WATERS." And given the alternative Navigation Territory that was *not* chosen—"GREAT LAKES & INLAND WATERS"—there is not even an arguable basis for contending that the boat's usage on any of the Great Lakes would be *included* within the term "INLAND WATERS."

*CBOE* teaches that the Policy's origin, stemming from that Binder/Application, also bears on the meaning of the identical "INLAND WATERS" coverage under the Policy as it was issued by Commercial Union in response to the Binder/Application.[8] No significance can be attributed to the fact that the other alternative—the road

---

7. This Court is of course aware that the tomato was once styled a "love apple" (pomme d'amour), so that a dictionary or encyclopedia might possibly contain some such reference. But the purpose of using the hypothetical example in the text is rather to show that a contracting party could legitimately (and really a fortiori) employ a usage that was not wholly fanciful but that would be outside the most common understanding of the casual reader.

8. Memisovskis' Response to Commercial Union's memorandum in support of the latter's own summary judgment motion (that response was filed this past October 4) urges that the Binder/Application cannot be considered by this Court because the document says:

> Upon acceptance of the application by the company and issuance of a policy to the named insured, this binder shall be null and void as of the effective date of the policy.

But the fact that the Binder/Application ceased to have any *contractual* effect upon the Policy's issuance does not cause it to disappear (as though by some conjurer's trick) as strong evidence of what the one corresponding term in the Policy as to its Navigation Limits coverage *meant.*

not taken [9]—in the Policy read "GREAT LAKES & TRIBUTARIES" rather than "GREAT LAKES & INLAND WATERS," as it had in the Binder/Application. That difference in language certainly signifies that the "TRIBUTARIES" of the Great Lakes were "INLAND WATERS" for Policy purposes—but it surely does not even conceivably suggest that the Great Lakes *themselves* were "INLAND WATERS."

Again it should be emphasized, especially in light of Maciuszek's statement that he never saw either the Binder/Application or the Policy before the occurrence of the accident that is now the subject of 91 C 2287, that the meaning of the Policy must be what was intended by *Commercial Union* and was wholly consistent with *its* reasonable understanding of the meaning of the Policy's terms. Because Commercial Union had depended entirely on what Maciuszek's agent Lewis told it, both when it issued the Policy with its limited coverage and when it kept the same coverage in force for the newly-acquired boat, that really closes the discussion.

Only one point remains, an obvious one. When the Ebbtide Cuddy was purchased to replace the Four Winds, that was the only change in the Policy that Lewis communicated to Commercial Union. That caused an increase in the premium (because the replacement boat was newer and much more expensive), but it did *not* bring about a change in the Navigation Limits.[10]

In sum, the dispute here as to the Policy's meaning is properly and fully resolved by resort to the contract documents alone. "INLAND WATERS" began and remained "INLAND WATERS," a term that did *not* embrace navigation on the Great Lakes. Hence Maciuszek's use of the Ebbtide Cuddy on Lake Michigan did not give rise to an "accident[ ] and loss[ ] which occur[red] ... while insured property is (a) afloat within the navigation limits specified on the Coverage Page" (Policy Part E § 1A).

## *Conclusion*

There is no genuine issue of material fact, and Commercial Union is entitled to a judgment as a matter of law. This Court declares that no insurance coverage is provided by Commercial Union under the Policy for the accident that is referred to in Dreiling's and Memisovskis' lawsuit against Maciuszek in 91 C 2287. This is a final order in 91 C 3970: a finding in favor of Commercial Union and against all of the other parties to this consolidated litigation—Maciuszek, Dreiling and Memisovskis. There will be a status hearing in the sole surviving action, 91 C 2287, at 9 a.m. January 6, 1992.

---

**9.** With apologies to Robert Frost.

**10.** Memisovskis' responsive memorandum to Commercial Union's motion makes a convoluted calculation of the increased premium in an effort to demonstrate that the switch in the covered vessel also somehow involved a broadening of the Navigation Limit. That effort to create a disputed fact issue is wholly unpersuasive.

EXHIBIT A

**Commercial Union**
**Harbormaster** **BOAT POLIC**
**Binder/Application**

The following Company _____ hereby binds insurance in favor of the insured named below from 12:01 _____ ANDARD TIME of the EFFECTIVE DATE and terminating at 12:01 _____ STANDARD TIM, the 30th day following such date for the coverages and limits of liability indicated below subject to _____ the terms of the policy. If this application is not accepted, a premium charge will be made for such period of time as insurance was in force under the provisions of this application.

**1. BINDER / CONTROL INFORMATION**

| BINDER NUMBER | TRANSACTION | | POLICY NUMBER | EFFECTIVE DATE |
|---|---|---|---|---|
| 25109 | NEW/BUS'N  REN'L  ENDT | C | | 3-15-89 |

PRODUCER CODE W17 43161
PRODUCER'S NAME & ADDRESS
CHRISTIAN STR... T... A...
12... W WHITE
GARDEN RIDGE IL

NAME OF INSURED John J MINCIUSZEK

NUMBER & STREET 7238 W 55" PLACE    CITY, STATE & ZIP CODE Summit IL 60501

LOSS PAYEE & ADDRESS None

**2. DESCRIPTION OF PROPERTY — EXPLAIN ANY 4 ANSWERS ON REVERSE SIDE OF COMPANY COPY**

WATERCRAFT TYPE: ☐ OUTBOARD  ☒ INBOARD/OUTDRIVE  ☐ INBOARD  ☐ SAIL    HULL CONST. Fiberglass

| | YR. | MANUFACTURER | MODEL | SERIAL NO. | LGTH | MAX SPEED | PURCHASE PRICE | PURCHASE DATE |
|---|---|---|---|---|---|---|---|---|
| BOAT | 78 | Four Winns | Cuddy | FWIB120M78C | 18.5 | 40 | $ | 3-15-89 |

| | YR. | MANUFACTURER | MODEL | SERIAL NO. | FUEL | TOTAL H.P. | PURCHASE PRICE | PURCHASE DATE |
|---|---|---|---|---|---|---|---|---|
| MOTOR | 78 | | | | ☒ GAS  ☐ DSL | 175  ☒ SGL  ☐ TW | $ | |

| | YR | MANUFACTURER | MODEL | SERIAL NO | LENGTH | PURCHASE PRICE | PURCHASE DATE |
|---|---|---|---|---|---|---|---|
| TRAILER | | | | | | $ | |

NAVIGATION TERR. (CHECK ONE):
☐ U.S. COASTAL ATLANTIC & INLAND WATERS – EASTPORT TO CAPE HATTERAS   ☐ U.S. COASTAL PACIFIC & INLAND WATERS
☐ U.S. COASTAL ATLANTIC & INLAND WATERS – CAPE HATTERAS TO KEY WEST   ☐ GREAT LAKES & INLAND WATERS
☐ U.S. GULF & INLAND WATERS – KEY WEST TO BROWNSVILLE   ☒ INLAND WATERS

NAVIGATION STORAGE: ☐ WET  ☒ DRY    STATE IN WHICH WATERCRAFT IS MOORED IL    NAVIGATION STORAGE LOCATION ☒ AT HOME  ☐ MARINA  ☐ OTHER *    NAVIG'N PERIOD 7 (MONTHS)

LAY UP STORAGE LOCATION AND HOW PROTECTED *  ☐ WET  ☒ DRY    LAY UP PERIOD FROM 11 TO 4

**3. COVERAGE & CREDITS**

| COVERAGES | | ACTUAL VALUE (PHYS DAM) | AMOUNT OF INSURANCE | DEDUCTIBLE | PREMIUM |
|---|---|---|---|---|---|
| A. PHYSICAL DAMAGE COVERAGES | WATERCRAFT | | 5500 | 100 — | |
| | MOTOR | | INCL | SAME AS BOAT | INCLUDED IN BOAT |
| | TRAILER | | 1000 | SAME AS BOAT | INCLUDED IN BOAT |
| | PERSONAL EFFECTS | $500 INCLUDED IN 'A' | | $50 | INCLUDED IN BOAT |
| | UNATTACHED EQUIP. & ACCESSORIES | $500 INCLUDED IN 'A' | | $50 | |
| B. LIABILITY COVERAGES | | $50,000 INCLUDED IN 'A' | 300,000 | | |
| C. MEDICAL PAYMENTS | | $1,000 INCLUDED IN 'A' | 5000 | | |

OPTIONAL COVERAGES:
☐ LONGSHOREMANS AND HARBOR WORK. COMP.   ☐ EXTENDED NAVIGATIONAL PERIOD
☐ SAILBOAT RACING   ☐ TOWING & ASSISTANCE   ☐ LIMITED COVERAGE – MEXICO NAVIGATION

CREDITS: CHECK APPLICABLE (MAXIMUM CREDIT 25%):
☐ EDUCATIONAL CREDIT: MEMBERSHIP – ATTACH CERTIFICATE
☐ EDUCATIONAL CREDIT: COURSE COMPLETION – ATTACH CERTIFICATE
BUILT-IN $CO_2$ EXTINGUISHER CREDIT  ☐ GAS  ☐ DIESEL
☐ DIESEL CREDIT   ☐ LOSS FREE CREDIT

CREDIT ADJUSTMENT
TOTAL PREMIUM

**4. UNDERWRITING INFORMATION - EXPLAIN ANY 4 ANSWERS ON REVERSE SIDE OF COMPANY COPY**

| OPERATOR'S NAME | BIRTH DATE | YEARS BOAT'G | % USE | MOTOR VEH. DRIVERS LIC. NO & LIC. STATE | MOTOR VEH. ACCIDENTS & CONVICTIONS LAST 3 YEARS * |
|---|---|---|---|---|---|
| John J Minciuszek | 4-23-65 | 8 | 99 | M222-4706-5116  IL | RECEIVED |

ANY BOATING LOSSES LAST THREE YEARS? Y* ☒N    WATERSKIING USE? Y* N    OVERLAND TRANSPORTAT'N (MILES ONE WAY)    PREVIOUS CARRIER State Farm    ANY OTHER CU POLICIES Y* ☒N

MVR-5

G65355 2 (5-88 Ed.)

Agent's Signature _____    Insured's Signature _____  MAR 23 1990

Upon acceptance of the application by the Company and issuance of a policy to the named insured, this binder shall be null and void as of the effective date of policy. The binder may be cancelled at any time by the insured. This binder shall not be valid unless countersigned by

## EXHIBIT B

HARBORMASTER POLICY COVERAGE PAGE

| POLICY NUMBER | PRODUCER | PRODUCER NAME |
|---|---|---|
| C: U79 20 6U | 1293961 | Christ. son Ins. Agcy. 02) |

RENEWAL OF PREVIOUS NO

The Company issuing this policy is indicated by the first letter in the POLICY NUMBER, as follows

**C** - COMMERCIAL UNION INSURANCE COMPANY
**A** - AMERICAN EMPLOYERS INSURANCE COMPANY
**F** - THE EMPLOYERS FIRE INSURANCE COMPANY
**N** - THE NORTHERN ASSURANCE COMPANY OF AMERICA

A STOCK COMPANY

**NAMED INSURED AND MAIL ADDRESS**

John J. Mariuszek
7238 W. 58th Place
Summit, IL 60501

Policy Period:
From 3/15/89
To: 3/15/90
12:01 A.M. Standard Time

Lay Up Period:
From: 11/1
To: 4/1
12:01 A.M Standard Time

### DESCRIPTION OF PROPERTY INSURED

| Your Watercraft | Yr | Manufacturer | Model | Length | Serial Number | Max. Spd. | Type |
|---|---|---|---|---|---|---|---|
| No. 1 | 78 | Four Winns Cbstsd | 190 | 18'5" 19' | SN413120170C ETC003926090 | 48.38 | I/O |
| No. 2 | | | | | | | |

| Your Motor | Yr. | Manufacturer | Model | Serial Number | Total H.P. | Sg./Tw. | Fuel | Type |
|---|---|---|---|---|---|---|---|---|
| No. 1 | 78 | Merc. | | | 175 260 | SC | Gas | |
| No. 2 | | | | | | | | |

| Your Trailer | Yr. | Manufacturer | Model | Serial Number | Length | |
|---|---|---|---|---|---|---|
| No. 1 | 90 | E Z Loader | | 1MBE15Y13LJ443536 | | Illinois |
| No. 2 | | | | | | |

### NAVIGATION LIMITS

- [ ] COASTAL ATLANTIC & INLAND WATERS Eastport to Cape Hatteras - U.S. Waters
- [ ] COASTAL PACIFIC & INLAND WATERS U.S. Waters
- [ ] COASTAL ATLANTIC & INLAND WATERS Cape Hatteras to Key West - U S Waters
- [x] INLAND WATERS
- [ ] COASTAL GULF & INLAND WATERS Key West to Brownsville - U.S. Waters
- [ ] GREAT LAKES & TRIBUTARIES Not East of Quebec, Canada

### A. BASIC COVERAGES

| COVERAGE | WATERCRAFT NO. 1 | | WATERCRAFT NO. 2 | |
|---|---|---|---|---|
| | Amt. of Insurance | Deductible | Amt. of Insurance | Deductible |
| **PART A.- Physical Damage** | | | | |
| Your Watercraft | 24000 5,590. | 250 100. | | |
| Your Motor | INCL. | Same as for your watercraft | | Same as for your watercraft |
| Your Trailer | 2000 1,000. | | | |
| Personal Effects | $500 | $50 | $500 | $50 |
| Unattached Equip. & Access. Min $500 | 500. | $50 | | $50 |
| **Part B. - Liability** Minimum $50,000 | 300,000. | | | |
| **Part C. - Medical Payments** Minimum $1,000 | 5,000. | | | |

### 6. OPTIONAL COVERAGES - Provided if checked for the applicable watercraft.

| Watercraft #1 | #2 | |
|---|---|---|
| [ ] | [ ] | Longshoremens & Harborworkers Compensation |
| [ ] | [ ] | Sailboat Racing |
| [ ] | [ ] | Limited Mexico Navigation |
| [ ] | [ ] | Extended Navigation Period |
| [ ] | [ ] | Towing Assistance |

### CREDITS - Applicable if checked — Maximum Credit 25%

Watercraft #1 #2
- [x] Educational Credit: Membership
- [ ] Educational Credit: Course Completion
- [ ] Diesel Credit

Watercraft #1 #2
- [ ] [ ] Loss Free Credit
- [ ] [ ] Gas-Built in CO₂ Extinguisher
- [ ] [ ] Diesel-Built in CO₂Extinguisher

### 7. PREMIUM SUMMARY

| | BASIC COVERAGES | % CREDIT | OPTIONAL COVERAGES | TOTAL WATERCRAFT PREMIUM | TOTAL POLICY PREMIUM |
|---|---|---|---|---|---|
| 1 | $144.00 | 25% 5% | $22.00 | | $166.00 |
| 2 | | | | | |

3/30/89 iw

LOSS PAYEE

La Salle National Bank
135 So La Salle St
Chgo Il 60603

COUNTERSIGNATURE

DATE

G6523-3 (Ed 6-88)