Alan Francis JACKSON, et al., Plaintiffs,

v.

LEADS DIAMOND CORPORATION, Defendant.

No. 88–8413–CIV.

United States District Court, S.D. Florida.

July 9, 1991.

James F. Dougherty, II, Miami Beach, Fla., for plaintiffs.

Max Rudmann, Boca Raton, Fla., for defendant.

---

1. Schaia Libschtein is the alter ego of Leads Diamond since he is the sole shareholder of the

## FINAL ORDER

ROETTGER, District Judge.

When this colorful jeweler's block policy insurance case first came on for hearing before the Court, the parties both agreed that the matter was ripe for a summary judgment hearing rather than trial at that time and consented to proceed on the basis of a hearing on Plaintiffs' motion for summary judgment.

After hearing the arguments for summary judgment, reviewing the memoranda of law, affidavits and exhibits submitted by the parties, having carefully reviewed the applicable law in the area and otherwise being duly advised on the premises this court concluded that there remained a material issue of fact as to whether rescission of the contract in this case was proper. This decision was based upon the answers to the application for insurance submitted by the Defendant's president, Schaia Libschtein. These answers, when viewed in the light most favorable to the non-moving defendant party, presented issues of material fact which had to be resolved at trial. *Barfield v. Brierton*, 883 F.2d 923, 933–34 (11th Cir.1989); *Byrd v. Clark*, 783 F.2d 1002, 1006 (11th Cir.1986). Accordingly Plaintiff's motion for summary Judgment was denied and this case proceeded to trial.

## FACTS OF THE CASE

Plaintiffs issued a jeweler's block policy to Defendant, a jeweler/diamond merchant upon Defendant's application effective November 13, 1987. The Defendant's principal director and president is Schaia Libschtein[1] who will also be referred to as Defendant for purposes of this order. Defendant would from time to time increase his coverage for a period of days if he were traveling with other dealers' jewels on consignment. When this occurred, Defendant would often designate the merchants whose jewels he carried on consignment as loss payees under the policy.

Corporation and runs the corporation himself.

Such was the case when in January, 1988, Mr. Libschtein collected diamonds on consignment from five different jewelers to sell on a trip to Stuart, Florida. Coverage for that trip was increased to $205,000.00, from the usual policy coverage of $155,-000.00, for the period up to and including January 20, 1988.

Mr. Libschtein apparently sold one set of diamonds to a physician in West Palm Beach and received cash for them. Mr. Libschtein did not deposit the cash that day, but kept it with him overnight; he alleges he was in front of the bank in Boca Raton the next morning to make a deposit.

At that time, Mr. Libschtein claims that he was robbed by an unknown assailant, who stuck a gun in his ear and demanded his car keys. The assailant apparently knew where Mr. Libschtein kept his jewelry, as he took the keys and immediately went to the car trunk. Upon opening it, the alleged thief took the briefcase which contained the diamonds, the cash, and the Defendant's inventory of other jewelry.

Instead of calling the police, Libschtein called Mark Wolkenfeld, his largest consignor and named loss-payee on the policy, and told him what happened. He then drove to Wolkenfeld's office arriving about forty-five minutes later. Wolkenfeld testified that upon his arrival Libschtein had soiled pants with a wet crotch, reddened eyes from crying and was dishevelled and visibly upset. It was at that time that Libschtein informed Plaintiff's agent by phone that he had been the victim of an armed robbery and all his jewels and the jewels he carried on consignment had been stolen. After that the police were called.

Following Libschtein's phone call the insurance company initiated an investigation and Libschtein submitted to several "depositions". In these lengthy sworn statements he denied having been known as Ira Gross or having been convicted of a crime in the countries of Switzerland, Germany and Belgium. However, Plaintiff had conducted an investigation, which supported the fact that Mr. Libschtein had been convicted first in Switzerland and after a short jail term there, was sent to West Germany where he was convicted and served two and one-half years in jail from 1984 to 1986. From there he was transported to Belgium where, following conviction, he served another six months in Luwens Prison in Belgium. All these crimes involved various jewelry frauds or misrepresentations. (Plaintiff alleges it was by a sleight-of-hand switching of stones from merchants.) After having been confronted with these allegations as well as extensive full body photographs taken of him following his various convictions which were furnished by Interpol, Libschtein admitted he had lied under oath and had been imprisoned as stated above. Plaintiffs then refused coverage under the policy and filed suit for declaratory relief and rescission of the contract.

Plaintiff Lloyd's has paid the five jewelry consignors under their own policies, but there are outstanding claims against Defendant for the balance of their losses not covered under their policies. One consignor, Mark Wolkenfeld, the named loss payee on the policy is out at least $115,000.00 as a result of Lloyd's refusal to pay on the policy. Neither Defendant nor its president Schaia Libschtein, stand to gain from the company's payment under the policy because all their rights and benefits, which may become due and owing under the policy to Defendant, have been assigned to one of the consignors, Zoe, Inc., in settlement of another civil suit filed against Defendant as a result of this incident.

## CONCLUSIONS OF LAW

This is a diversity case over which this court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper in this court as Defendant was incorporated and had its principal place of business in the Southern District of Florida at the time the action accrued. Accordingly, Florida law is applicable to a determination of this case.

■■■ Plaintiff asserts that the policy is voidable because Defendant, through its president, Schaia Libschtein, failed to disclose facts which were material to the issuance of the policy by the insurer. Although there were no questions on the application concerning prior criminal

records of any employee of the Defendant corporation, Plaintiff asserts that Defendant was under an affirmative duty to disclose all facts material to the assumption of the insurance risk and that insurer was not necessarily required to initiate the inquiry. Plaintiff asserts that duty exists because a jeweler's block policy is like a marine insurance contract to which the doctrine of *Uberrimae Fidei* is applicable. This doctrine requires the highest degree of good faith between the parties in the inception of a contract and requires the applicant for marine insurance to disclose voluntarily all known circumstances to the insurer which might have a bearing on the risk to be assumed.

Plaintiff cites numerous cases in support or this argument, although every case cited by Plaintiff deals with a marine insurance contract rather than a jeweler's block policy. However, Florida statute 624.-607(1)(a)(3) applies to this case. That statute defines marine insurance as:

> insurance against any kinds of loss or damages to precious stones, jewels, jewelry, gold, silver, and other precious metals, whether used in business or trade or otherwise and whether the same be in courts of transportation or otherwise.

Fla.Stat. § 624.607(1)(a)(3).

■ Under this definition it is the finding of this court that Florida intended to include a jeweler's block policy in the genre of marine insurance contracts to which an affirmative duty of disclosure of material facts under the doctrine of *Uberrimae Fidei* would attach. *See Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2nd Cir.1986), *cert. denied* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). These types of contracts are to be "conceived in the uttermost good faith" and "incubated in a legal environment which transcends the sharper practices of the world of commerce", *Albany Ins. Co. v. Wisniewski*, 579 F.Supp. 1004 (D.R.I.1984). In this case Libschtein had a duty to disclose voluntarily every material fact and circumstance within his knowledge and unknown to the insurer even though no direct inquiry was made. Defendant's failure to disclose requires the

contract to be declared void *ab initio*. *Gulfstream Cargo Ltd. v. Reliance Ins. Co.*, 409 F.2d 974, 980–81 (5th Cir.1969); *King v. Aetna Ins. Co.*, 54 F.2d 253, 254 (2nd Cir.1931).

It is clear to this court that had Schaia Libschtein disclosed his whereabouts between 1984 and 1986, the jeweler's block insurance policy would never have been issued. This assumption is buttressed by the telephone deposition of Anthony Sigwart, an underwriter for Lloyd's of London. It is the finding of this court that Libschtein's prior convictions for jewelry thefts were material facts affecting the insurer's risk in issuing the policy. Therefore, they should have been disclosed to the insurer by Libschtein even though no direct question was asked of Leads Diamond, Corp. concerning the criminal background of any of its principals or employees. The reason Libschtein kept quiet about his background is obvious: an insurance underwriter or company would hardly insure a convicted jewel thief against loss or theft of diamonds and/or other jewels.

This case presents suspicious evidence whether Libschtein was robbed or if the story was a fabrication executed by a seasoned con man. The truth may never be known since Libschtein has fled the country and to the best of this court's knowledge is somewhere in the Caribbean serving time for passing bad checks. Nevertheless, it is the decision of this court that Plaintiff is entitled to rescind the contract executed by Schaia Libschtein on behalf of Defendant, Leads Diamond for failure to disclose material facts under the doctrine of *Uberrimae Fidei* or utmost good faith. *Gulfstream Cargo, Ltd. v. Reliance Ins. Co.*, 409 F.2d 974 (5th Cir.1969).

■ Also before this court is a motion to intervene in this case by Mark Wolkenfeld and Paul T. Sciarrino, d/b/a Prestige Diamonds. This motion was made following the one day non-jury trial in this case. The proposed Intervenors have also filed a motion to strike Plaintiff's response to their motion as untimely. Plaintiff, of course, objects to this late motion to Intervene.

Notwithstanding Plaintiff's response, this court is of the posture that the motion to Intervene has come much too late. Had the motion been made at least before trial, this court might have entertained the intervention. However, filing a motion to Intervene after trial, when trial did not address Intervenor's claims, is simply too late and accordingly the motion is denied.

WHEREFORE it is, ORDERED AND ADJUDGED that the insurance policy issued to Leads Diamond, Corp. is hereby declared void *ab initio* for failure of Defendant's president, Schaia Libschtein, to disclose his status as a convicted jewel thief to the insurance agent prior to issuance of his jeweler's block policy.

Plaintiff has abandoned his other causes of action originally pled in the complaint and is to take nothing by this action other than this declaration that the policy is void.

DONE AND ORDERED.