CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Subscribing to Policy No. 200/451/8505, Plaintiff,

v.

Etienne GIROIRE, and Associated Marine Institutes, Inc. Defendants.

Etienne Giroire, Defendant/Counterclaimant/Third Party Plaintiff,

v.

Berg Williams Marine Insurance, and David Williams, Third Party Defendant.

No. 96–7398–Civ–GOLD.

United States District Court, S.D. Florida.

April 30, 1998.

**1308**

Alvin Ernest Entin, Entin & Margules, Fort Lauderdale, FL, Steven Eric Goldman, Goldman & Hellman, New York City, for Lloyds.

Ronald Alfred Fitzgerald, Robert Dewitt McIntosh, Thomas Guy Aubin, Fleming O'Bryan & Fleming, Fort Lauderdale, FL for Etienne Giroire.

Ronald Alfred Fitzgerald, Robert Dewitt McIntosh, Thomas Guy Aubin, Fleming O'Bryan & Fleming, Fort Lauderdale, FL, John Edwaed Herndon, Jr., Conroy Simberg Lewis & Ganon, Hollywood, FL, for Berg–Williams Marine Ins., David Williams.

## ORDER GRANTING CERTAIN UNDER-WRITERS AT LLOYDS LONDON'S MOTION FOR SUMMARY JUDG-MENT AGAINST ETIENNE GIR-OIRE

GOLD, District Judge.

The issue in this case is whether the insured is entitled to recover under a marine insurance policy where either he or his agent misrepresented a material fact on the insurance application and where the policy excluded losses incurred during a race or in preparation for a race. Plaintiff Certain Underwriters at Lloyds, London (Lloyds) argues that under federal maritime law the insurance policy it issued to Etienne Giroire was void *ab initio* and may be rescinded under the doctrine of *uberrimae fidei*. Alternatively, it asks the Court to find that

there is no coverage because an exclusionary clause bars recovery under the facts of this case.

## I. FACTS

In this insurance dispute, the insured, Etienne Giroire, is a professional sailor with extensive experience in yacht racing and who was once hailed by the newspapers as "America's best chance" to win the prestigious Europe 1 Star international yachting race. Giroire owned a sea-going vessel named the K–2 which was designed for the sole purpose of competing in transatlantic, solo yachting competitions. He planned to enter the K–2 in the Europe 1 Star race which was to be held in the summer of 1996.

On July 6, 1995, Giroire went to David Williams of the Berg–Williams insurance agency to obtain marine insurance, including hull coverage, for the K–2. Williams and Giroire had previously discussed purchasing a policy from Lloyds which would provided coverage on the K–2 from July 7, 1995 through July 7, 1996. Williams informed Giroire that the policy had a clause excluding coverage for harm to the vessel incurred "during a race or speed trial or during preparation for a race or speed trial." One of the questions on the application asked "is the boat used for racing?" Giroire contends that he informed Williams that he intended to enter the K–2 in a race scheduled for mid–June 1996. According to Williams, Giroire said that he would not be racing the vessel until some time after the policy period had expired. Williams allegedly advised Giroire that the K–2 would be covered under the policy as long as the vessel was not damaged while actually engaged in a race or in preparation for a race.

Giroire personally completed only that portion of the application which requested information about his date of birth, driver's licence number, state of issuance, signature, and date. Williams filled in the rest. The application was forwarded to T.L. Dallas, an underwriter for Lloyds, London. It is undisputed that the box which asked whether the vessel would be used for racing was checked "no." Lloyds issued the policy. On March 4,

1996, the K–2 was inspected by a marine surveyor pursuant to the policy for the purpose of ensuring that it was seaworthy. The marine survey report issued to Lloyds stated that the K–2 was a "well constructed high tech vessel designed and built solely for the purpose of ocean racing which historically she has competed very successfully...."

While sailing up the east coast of the United States in May of 1996, the K–2 was demasted during a storm. The damage occurred during the policy period while the vessel sailed from Florida to Newport, Rhode Island. Giroire was sailing the K–2 to Newport singlehandedly in order to qualify for the Europe 1 Star race in which the participants sailed from Plymouth, England to Newport, Rhode Island. The travel from Newport to Plymouth was itself a race called the Legend Cup, a feeder race for the Europe 1 Star race.

Giroire submitted a claim for his loss of the K–2 to Lloyds. Lloyds refused to pay, asserting that Giroire made a material misrepresentation on his application by indicating "no" in response to the question whether the vessel would be used for racing. Additionally, Lloyds contended that there was no coverage under the policy because the policy had an exclusion for losses incurred "during a race or speed trial or during preparation for a race or speed trial," and the yacht was damaged when Giroire was engaged in a 500 mile solo voyage to qualify for the Europe 1 Star race and while sailing to Newport to participate in the Legend Cup.

## II. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as

a matter of law." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. Sept.1997). The moving party has the burden to establish the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Tyson Foods, Inc.,* 121 F.3d at 646. Once the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, the burden shifts to the non-movant to come forward with a response setting forth "specific facts" showing that there is a genuine issue for trial. The opposing party may not rest upon the mere allegations or denials of [his] pleading, rather he must present sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether the movant has met its burden, the Court must view the evidence and all reasonable inferences arising from it in the light most favorable to the nonmoving party. *Tyson Foods, Inc.,* 121 F.3d at 646.

## III. DISCUSSION

■ Lloyds argues that controversies arising from marine insurance policies are governed by federal maritime law and that in the Eleventh Circuit the well-entrenched doctrine of *uberrimae fidei* must be applied to determine this motion for summary judgment. *Uberrimae fidei* requires parties to a marine contract to exercise the highest degree of good faith and to fully disclose all facts material to an insurance risk. Lloyds contends that if the doctrine of *uberrimae fidei* is applied in this case, Lloyds is entitled to rescind the insurance policy issued to Giroire as the policy is void *ab initio* because there was a material misrepresentation on the insurance application. For purposes of this motion for summary judgment, Giroire concedes that this action is maritime in nature and the doctrine of *uberrimae fidei* should be applied by the Court in resolving the misrepresentation issue. He argues, however, that the doctrine of *uberrimae fidei* does not mandate a finding that the insurance policy is void *ab initio*. According to

Giroire, Lloyds is not entitled to summary judgment because (1) state law rather than federal law governs the construction of exclusionary clauses and in this case the exclusionary clause was ambiguous and must be construed against the insurer; and (2) because there is no "firmly-entrenched" federal maritime rule on whether the affirmative defenses of waiver or estoppel may be used by an insured as a defense in an insurer's action to rescind a policy based on a material misrepresentation, state law may be applied to determine whether the insured may assert these doctrines to recover benefits where there has been a material misrepresentation.

█ Giroire's argument relies on *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), in which the Court wrote that in the absence of federal legislation, or a conflicting rule judicially established by federal courts, the regulation of marine insurance policies is left to the states. *Id.* at 370, 75 S.Ct. 368. Giroire contends that a review of 11th Circuit case law reveals that there are no maritime cases that prohibit the use of waiver and estoppel as affirmative defenses to an insurance company's action to rescind a contract based on misrepresentation. In light of the absence of a federal mandate, Giroire argues that this Court may look to state law to determine whether the principles of waiver or estoppel may be used in this case. The Court agrees with Giroire that there is no firmly entrenched federal policy with respect to exclusionary clauses and thus Florida law may be used to determine whether coverage is precluded by the exclusionary clause. Nonetheless, the Court finds that Giroire's argument ignores that portion of the *Wilburn Boat Co.* opinion which holds that existing tenets of maritime law fashioned by the Supreme Court must be followed. "And States can no more override such judicial rules validly fashioned than they can override Acts of Congress." *Id.* In this case, the doctrine of *uberrimae fidei* is a firmly-entrenched, judicially-established, federal maritime rule governing the rescission of maritime contracts based on a material misrepresentation in a marine insurance application. As interpreted by the 11th Circuit, *uberrimae fidei* does not permit the use

of the principles of waiver and estoppel to provide coverage where there has been a material misrepresentation on the application.

█ **A. THE EXCLUSIONARY CLAUSE.** Lloyds argues that the Court should find that as a matter of law there is no coverage for the damages to the K–2 because the policy has an exclusion which specifically provides that there is no coverage for any loss incurred "during a race or speed trial or during preparation for a race or speed trial." According to Lloyds, the K–2 was damaged while Giroire was using it in preparation for a race; he was sailing it to Newport singlehandedly to fulfill a prerequisite to participation in the Europe 1 Star race, and he was bringing it up to Newport in preparation for the Legend Cup.

█ Because there is no firmly-entrenched federal law on the construction of exclusionary provisions, the Court looks to Florida law to resolve Lloyd's argument that Giroire is not entitled to insurance benefits because an exclusionary clause bars coverage for the loss at issue. Interpretation of a marine policy is a question of law for the court. *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir.1985). A policy's language is ambiguous when its meaning is doubtful. *Hagen v. Aetna Casualty & Sur. Co.*, 675 So.2d 963 (Fla. 5th DCA 1996). Whether the terms of a policy are ambiguous depends not upon the meaning of such terms to one engaged in the insurance business or trained in law, but upon what the drafter of the policy might reasonably anticipate would be the effect of the language used upon an untrained mind. John A. Appleman and Jean Appleman, *Insurance Law and Practice* section 7386. In this case Giroire argues, persuasively, that the language used in the exclusion, "during preparation for a race," is ambiguous. The Court agrees that as applied to the facts of this case, there is a reasonable basis for a difference of opinion as to whether the yacht was damaged "during preparation for a race." There is nothing in the policy to indicate what the insurer meant by the term "preparation." It is settled law that insurance policies in general, and exclu-

sions in particular, are interpreted strictly against the carrier. *Mitchel v. Cigna Prop. & Cas. Ins. Co.*, 625 So.2d 862, 864 (Fla. 3d DCA 1993). An exclusion clause must be construed in a manner which affords the broadest coverage. *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So.2d 176, 179 (Fla. 4th DCA 1997). In light of these principles, the Court finds that a genuine issue of fact exists as to whether the loss in this case falls within the purview of the exclusion's terms.

**B. RESCISSION BASED ON A MATERIAL MISREPRESENTATION.** Alternatively, Lloyds contends that it is entitled to rescind the insurance policy on the grounds that it was *void ab initio* because the application contained an affirmative and material misrepresentation that the vessel would not be used for racing.

**1. The misrepresentation.** Seeking insurance for the K–2, in June 1995, Giroire consulted David Williams of the Berg–Williams insurance agency. Williams obtained a quote from an underwriter for Lloyds's, but the quote was for insurance on vessels which are used only for pleasure. Williams wrote Giroire a letter informing him that he had obtained a quote which was premised on the condition that the vessel would be insured only for private pleasure use.

> [Coverage is for] private pleasure only and excludes any commercial use and any racing use, which also includes pre-race qualifying and preparation. Should you enter a race you must contact my office to obtain permission from underwriters to do so, otherwise no coverage would be in place.

Notwithstanding his receipt of this letter, and his knowledge that the policy was intended to cover only pleasure vessels, Giroire went to Williams's office where he filled out an application for the Lloyd's policy. After providing responses to some questions on the application Giroire left the application with Williams to complete. The application had a clause which stated, "PLEASE READ BEFORE SIGNING THE APPLICATION," and cautioned applicants about the consequences of misrepresentation.

> Any misrepresentations in this application for insurance, will render insurance coverage null and void from inception.

When the application was submitted to Lloyds, a "no" response was checked in answer to a question on the second page of the application where the prospective insured was asked, "Is the boat used for racing?" Giroire contends that Williams filled in that response.

**2. The doctrine of *uberrimae fidei*.** Because federal maritime law is well-established with respect to an insured's duty to make a full and complete disclosure on a marine insurance application, the Court must use federal maritime law to resolve Lloyds's claim that Giroire's material misrepresentation voids the insurance contract. *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 695 (11th Cir.1984); *Northfield Ins. Co. v. Barlow*, 983 F.Supp. 1376, 1379 (N.D.Fla. 1997). See also Grant Gilmore & C. Black, *Law of Admiralty* 62 (2d ed.1975). Lloyds asserts that it is entitled to rescind the insurance policy under the doctrine of *uberrimae fidei*, a concept long recognized in admiralty law. *See McLanahan v. Universal Ins. Co.*, 26 U.S. 170, 1 Pet. 170, 7 L.Ed. 98 (1828). *Uberrimae fidei* requires parties to a maritime insurance contract to deal in utmost good faith. The insurance applicant must voluntarily and accurately disclose to the insurance company all facts which might have a bearing on the insurer's decision to accept or reject the risk. *Jackson v. Leads Diamond Corp.*, 767 F.Supp. 268 (S.D.Fla.1991). The rationale for applying the doctrine of *uberrimae fidei* was stated long ago by the Supreme Court which recognized that a marine underwriter often has no practicable means of checking on either the accuracy or the sufficiency of the facts furnished him by a prospective insured until after the risk has been accepted. The doctrine of *uberrimae fidei* was established in order to ease the insurer's burden.

> The underwriter must be presumed to act upon the belief, that the party procuring insurance, is not, at the time, in possession of any facts, material to the risk, which he does not disclose; and that no known loss has occurred, which, by reasonable dili-

gence, might have been communicated to him. If a party having secret information of a loss, procures insurance, without disclosing it, it is a manifest fraud, which avoids the policy.

*McLanahan,* 26 U.S. at 185, 1 Pet. at 185, 7 L.Ed. 98. This duty to make full disclosure has been accepted in the Eleventh Circuit as a firmly entrenched precedent. *Steelmet, Inc. v. Caribe Towing Corp.,* 747 F.2d 689, 695 (11th Cir.1984); *D.J. McDuffie, Inc. v. Old Reliable Fire Ins. Co.,* 608 F.2d 145 (5th Cir.1979). Under *uberrimae fidei* a material misrepresentation on a marine insurance policy, even if innocently made, is grounds for rescission.

Nothing is better established in the law of marine insurance than that a mistake or commission material to a marine risk, whether it be willful or accidental, or result from mistake, negligence or voluntary ignorance, avoids the policy.

*Gulfstream Cargo, Ltd. v. Reliance Ins. Co.,* 409 F.2d 974, 980 (5th Cir.1969). Thus applying *uberrimae fidei,* a misrepresentation on the insurance application at issue, if material, would void the contract.

In this case the language of the insurance policy itself is consistent with the doctrine of *uberrimae fidei.* The pertinent clause of the insurance application states that, "Any misrepresentations in this application for insurance, will render insurance coverage null and void from inception." Thus the parties clearly intended the obligations of *uberrimae fidei* to apply to this insurance transaction.

■■ Giroire argues, and the Court agrees, that if Florida law were applied to the misrepresentation on the Lloyds policy, the insured would be entitled to assert the affirmative defenses of waiver and estoppel. For example, it is a long-standing principle of law in Florida that knowledge, either actual or constructive, imputed to an insurer, coupled with the insurer's wholesale failure to make further inquiry or take further actions based on that knowledge, waives the insurer's rights to forfeit under the policy. *Columbian Nat'l Life Ins. Co. v. Lanigan,* 154 Fla. 760, 19 So.2d 67 (Fla.1944); *Johnson v. Life Ins. Co. of Georgia,* 52 So.2d 813 (Fla.1951); *Cox v. American Pioneer Life Ins. Co.,* 626

So.2d 243, 246 (Fla. 5th DCA 1993). Here Giroire argues that the marine report given to Lloyds which stated that the yacht was built for and had been used for racing, put the insurer on notice that the yacht was use for racing purposes. Although that argument may be persuasive if Florida law was applied, the Court finds that the Eleventh Circuit has not carved out such an exception to *uberrimae fidei* in marine insurance contracts. *See Albany Insurance Co. v. Anh Thi Kieu,* 927 F.2d 882, 889 (5th Cir.1991) (recognizing that in the Eleventh Circuit the doctrine of uberrimae fidei is well settled even in the face of contrary state law, but stating that the doctrine is no longer well-entrenched in the 5th Circuit). Giroire is unable to point to any federal maritime case law from the 11th Circuit indicating an intent to abandon the principle of *uberrimae fidei.* After reviewing 11th Circuit cases discussing the obligation for full disclosure in marine insurance contracts, the Court concludes that *uberrimae fidei* is well-established in the 11th Circuit and clearly permits an insurer to rescind a policy as void *ab initio* where the insured has made a material misrepresentation or has failed to disclose a material fact when applying for the insurance. There has been no indication from the Eleventh Circuit that affirmative defenses such as waiver and estoppel may be used to avoid the time-honored obligation of good faith and full disclosure.

■■ **3. Materiality.** Giroire argues that any misrepresentation in this case was not material. Applying federal maritime law, the Court cannot agree. The doctrine of *uberrimae fidei* places a strict burden on the insured to volunteer all information which might have a bearing on the scope or the risk assumed. *Albany Ins. Co. v. Horak,* 1994 A.M.C. 273 (E.D.N.Y.1993). Materiality under federal maritime law is broader in application than Florida law. *Northfield,* 983 F.Supp. at 1383. Under federal law, "materiality" is defined as "that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk" *Id.* (quoting *Kilpatrick,* 795 F.2d at 942–43). In the context of marine insurance, "concealment" is the fail-

ure to disclose "any material fact or circumstance in relation to the subject matter of the contract which may increase the liability to loss, or affect the risk assumed, and which is, in fact or law, within or ought to be within, the knowledge of one party, and of which the other party has no actual or presumptive knowledge." *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 695 (1984). To establish materiality, Lloyds provided the unrebutted affidavit of Mr. Burke A. Usher, an underwriter for Lloyds, in which Usher testifies that had Lloyds received a truthful "yes" answer to the question whether the boat was used for racing, Lloyds would have declined coverage. In light of such uncontradicted evidence, the Court finds that the misrepresentation was material as a matter of law.

■ **D. Agency.** Giroire contends that he is not liable for the misrepresentation because he did not give the false answer; the "no" response was made by Williams who completed the application after Giroire left much if it blank. The Court disagrees. Giroire approached Williams, who he had known for many years, and asked him to obtain insurance. Williams then contacted T.L. Dallas in London, the Lloyds underwriting agent, to explore whether he could obtain coverage. Williams had no contractual relationship with Lloyds and no authority to bind coverage on behalf of Lloyds.

Federal courts have recognized that where a U.S. producing broker seeks to obtain insurance from Lloyds of London, the broker is acting solely as the agent for the insured.

> The recognized custom and usage of the London Insurance market it that the broker is the agent of the potential assured for most purposes, including the placement of insurance. The potential assured is recognized as the broker's client. The recognized role of the broker is to obtain the best possible terms and quotation he can from the market for his client.

*Edinburgh Assurance Co. v. R.L Burns Corp.*, 479 F.Supp. 138, 144 (C.D.Cal.1979); *Travelers Indem. Co. v. Booker*, 657 F.Supp. 280, 286 (D.D.C.1987). This is in accordance with the general rule in the context of marine insurance that a broker acts as agent for the insured. *Dreiling v. Maciuszek*, 780 F.Supp. 535, 540 (N.D.Ill.1991); *Washington Int'l Ins. Co. v. Mellone*, 773 F.Supp. 189 (C.D.Cal.1990). It is also in accordance with Giroire's third party complaint against Williams in which Giroire alleges a contractual relationship with Williams. In light of the above authority, the Court finds that Williams was Giroire's agent as a matter of law.

■ Because the doctrine of *uberrimae fidei* requires an insured to voluntarily and accurately disclose to the marine insurer all material risks which might have a bearing on the underwriter's decision to accept or reject the insurance, or with respect to what premium to charge, *Jackson v. Leads Diamond Corp.*, 767 F.Supp. 268 (S.D.Fla.1991), Giroire cannot escape this requirement by passing this responsibility on to his agent. Under *uberrimae fidei*, it is the insured who is in the best position to know and report any facts or circumstances material to the risk.

> Since the assured is in the best position to know of any circumstances material to the risk, he must reveal those facts to the underwriter, rather than wait for the underwriter to inquire. Id. The standard for disclosure is an objective one, that is, whether a reasonable person in the assured's position would know that the particular fact is material. *Btesh v. Royal Ins. Co.*, 49 F.2d 720, 721 (2d Cir.1931). To be material, the fact must be "something which would have controlled the underwriter's decision" to accept the risk. Id. The assured's failure to meet this standard entitles the underwriter to void the policy ab initio.

*Puritan Ins. Co.*, 779 F.2d at 870–71; *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 13 (2d Cir.1986). Upon receiving the application, Lloyds relied on the "no" answer in determining whether to accept the risk. The insurer is not to blame if the broker erroneously prepares the application, because the insurer issues the policy based on the application. The insurer is entitled to rely on the representations of the insured's agent. *See Dreiling v. Maciuszek*, 780 F.Supp. 535, 541 (N.D.Ill.1991) (in marine insurance, the broker acts as agent for the insured, not the insurer, thus boat owner is charged with

knowledge that his broker possessed but failed to communicate to the insurer).

### IV. CONCLUSION

There is no dispute that Giroire failed to disclose to the insurance company the fact that he would be using the K–2 for racing or to qualify for racing. There is no dispute that either Giroire of his agent checked the "no" box where the application asked if the vessel would be used for racing. The uncontradicted evidence is that the insurer reasonably considered such information to be material to its decision to accept the risk. Applying, as it must, the doctrine of *uberrimae fidei* which is well settled in the Eleventh Circuit, the Court finds that Giroire had a duty to voluntarily disclose the information that the K–2 would be used for racing or to qualify for racing. Giroire's omissions and his affirmative misrepresentation operated to void the policy *ab initio* under the *uberrimae fidei* principle of marine insurance law. Because Giroire failed to establish a genuine issue of material fact with respect to his obligation to disclose, Lloyds is entitled to summary judgment