**LA REUNION FRANCAISE, S.A., Plaintiff,**

v.

**George CHRISTY and Nancy Christy, Defendants.**

**No. 98–623–CIV–T–24(A).**

United States District Court, M.D. Florida.

Aug. 6, 1999.

Herbert John Baumann, Jr., Butler, Burnette & Pappas, Tampa, FL, for La Reunion Francaise, S.A., plaintiff.

Richard W. Glenn, Law Office of Richard W. Glenn, West Palm Beach, FL, for George Christy, defendant.

### ORDER

BUCKLEW, District Judge.

The Court has before it Plaintiff's Motion for Summary Judgment (Doc. No. 16, filed May 5, 1999). Defendants filed a memorandum in opposition on June 7, 1999 (Doc. No. 31). On June 18, 1999, Plaintiff filed a reply to Defendants' memorandum in opposition (Doc. No. 36). A reply brief is not permitted in the Middle District of Florida absent a specific grant of permission by the Court. See Local Rule 3.01(b) of the Local Rules for the Middle District of Florida. Therefore, the Court will not consider Plaintiff's reply brief in reaching its decision in this matter.

### I. Background

The following is a statement of the generally undisputed facts in this case; where there is a dispute as to the facts, the Court will so indicate. Nancy Christy purchased the "Flamingo," a 37 foot 1979 Hunter auxiliary sailing vessel in March 1997 for $33,000.00. See N. Christy Depo. at 18–20. Nancy Christy contacted Blue Water Insurance, Inc. about marine insurance for her vessel in January 1997, and submitted a completed application to the company on March 25, 1997. See Spink Depo. at 14–15. Along with the application, Nancy Christy sent an "Estimated Sailing Itinerary" which had been completed by Nancy and George Christy. See N. Christy Depo. at 32.

Blue Water Insurance, Inc. is an insurance agency specializing in obtaining yacht insurance for individuals. See Spink Depo. at 6–7. Blue Water Insurance, Inc. acted as a broker in this matter by representing the individual insured, in this case the Christys, as its client; as such, Blue Water Insurance, Inc. has no contractual relationship with La Reunion Francaise, S.A. See id. at 9, 70.

Blue Water Insurance, Inc. has a brokerage relationship with T.L. Dallas & Co., Ltd., which is an underwriting and managing general agency representing La Reunion Francaise, S.A. See id. at 11. Blue Water Insurance, Inc. submits risks to the T.L. Dallas & Co., Ltd. Facility, located in the United Kingdom, on a brokerage basis and waits for the underwriter at T.L. Dallas & Co., Ltd. to reply with an acceptance or rejection of a risk, along with a premium quote. See id. at 11. As Blue Water Insurance, Inc. was acting as a broker for the Christys, it had no authority to bind La Reunion Francaise, S.A. or T.L. Dallas & Co., Ltd. See id. at 21.

In this case, Defendants sought insurance for their vessel in anticipation of crossing the Atlantic Ocean and using the vessel in the Mediterranean sea. See id. at 16–17. Both George and Nancy Christy were to be operators of the vessel. See N. Christy Depo. at 35. Neither the Christys nor Blue Water Insurance, Inc. disclosed

to La Reunion Francaise, S.A. that George Christy was arrested at sea in 1985 while acting as captain of a vessel, was convicted in federal district court for possession of marijuana and conspiracy to distribute marijuana. *See* G. Christy Depo. at 23–25. George Christy was sentenced to five years imprisonment, of which he served eleven months. *See id.* Nancy Christy knew of the conviction at the time she completed the application. *See* N. Christy Depo. at 16.

On the basis of the application and the Estimated Sailing Itinerary, Blue Water Insurance, Inc. indicated the insurance premium on the vessel for the policy in which T.L. Dallas & Co., Ltd. acted as the underwriting manager for La Reunion Francaise, S.A. *See* Spink Depo. at 20. This indication was based on rating guidelines used to allow brokers such as Blue Water Insurance, Inc. to provide an informal indication of the likely premium. *See id.* In order to obtain an actual quote, the application was submitted to T.L. Dallas & Co., Ltd. in April 1997, which provided a premium quote of $1,262.00 with a $25.00 policy fee. *See* Motion for Summary Judgment Exh. C.

There is an alleged factual dispute as to the locations for which Blue Water Insurance, Inc. requested coverage under the policy at issue. Citing to the deposition of Donald Spink, an employee of Blue Water Insurance, Inc., Plaintiff states that the marine insurance policy covered use in the Atlantic Ocean and in the Mediterranean Sea. *See* Spink Depo. at 22, 23. Defendants, conversely, specifically dispute this fact, also citing to the deposition of Mr. Spink, on the ground that the Estimated Sailing Itinerary included the Caribbean as a planned sailing destination. *See* Spink Depo. at 22, 23. Upon review of the supporting documentation, it appears that this is not a dispute as to the facts, but rather a clarification: the application itself did not include the Caribbean as a sailing destination, but the Estimated Sailing Itin-

erary did in fact include the Caribbean as a sailing destination.

On April 4, 1997, T.L. Dallas & Co., Ltd. responded to Blue Water Insurance, Inc. to confirm that the application was accepted, effective as of that date. *See* Motion for Summary Judgment Exh. D. The amount of the premium was $1,262.00. *See id.* On April 11, 1997, T.L. Dallas & Co., Ltd. mailed an original Cover Note to Blue Water Insurance, Inc., indicated that the navigational limits as "Atlantic and Mediterranean." *See* Spink Depo. at 24–25. This Cover Note was not provided to the Christys. *See id.* at 29. Instead, Blue Water Insurance, Inc. provided the Christys with a copy of its own copy of the Insurance Binder. *See id.* The Insurance Binder in question states under "Description of Operations/Vehicles/Property (Including Location)" "1979 37' Hunter Atlantic Crossing To Mediterranean Sea." *See* Motion for Summary Judgment Exh. G. Nancy Christy states that she did not receive a copy of the letter and binder. *See* N. Christy Depo. at 36–37.

On April 24, 1997, Nancy Christy wrote to Blue Water Insurance, Inc. to request information on changing the policy navigational limits to include the Caribbean. *See* Motion for Summary Judgment Exh. H. Donald Spink responded to this request on that same day. *See* N. Christy Depo. at 41. Thereafter, Christy informed Blue Water Insurance, Inc. that the vessel would not be crossing the Atlantic Ocean to the Mediterranean Sea, but rather would be kept in a marina in Sarasota, Florida. *See* Motion for Summary Judgment Exh. J. As such, Christy requested that she be given any information regarding a potential temporary premium reduction. *See id.* Apparently Christy did not receive an immediate response to this correspondence. *See* N. Christy Depo. at 42.

There appears to be a factual dispute between the parties at this point. Nancy Christy states that subsequent to her May 27, 1999 letter, she telephoned Blue Water Insurance, Inc. to ask for information re-

garding policy coverage in the Caribbean. *See id.* at 43. Christy states that she told a Blue Water Insurance, Inc. employee that she wanted coverage in the Caribbean. *See id.* at 44. In addition, Defendants point to an exhibit attached to the deposition of Donald Spink which is a facsimile dated June 26, 1998. In this facsimile, Spink states that "I pointed out to George Cristy [sic] that the underwriters have requested Nancy Cristy [sic] explain how George Cristy [sic] got to Jamaica bearing in mind the navigation limits on her policy are East Coast USA and Bahamas only on numerous occasions. . . ." *See* Spink Depo. Exh. D. The Court notes that the policy referred to by Plaintiff's attorney in the deposition of Nancy Christy states that the navigational limits were amended to the East Coast, U.S., including the Bahamas. *See* N. Christy Depo. at 47.

In its statement of facts, however, Plaintiff states that "[b]ased upon Nancy Christy's letter of May 27, 1997, Blue Water believed that she was asking for coverage restricting operation of the vessel to the East Coast of the United States and on June 5, 1997 Blue Water contacted T.L. Dallas and requested that Policy No. 200/534/S0505 be altered to restrict insured navigation of the vessel to the East Coast of the United States." *See* Motion for Summary Judgment at ¶ 36; *see* Spink Depo. at 33. Therefore, it appears that the parties agree that the East Coast and the Bahamas were included in the navigational limits, but they do not agree as to the Caribbean.

On June 9, 1997, T.L. Dallas & Co., Ltd. responded to Blue Water Insurance, Inc.'s request of June 5 and amended the navigational limits to include the East Coast of the United States only. *See* Motion for Summary Judgment Exhs. L & M, resulting in a premium refund of $116.00 to the Christys. Blue Water Insurance, Inc. sent a cover letter to Nancy Christy on June 18, 1997 advising her that a copy of the policy was enclosed, and that "we have also enclosed the endorsement for navigational

change with premium return." *See* Motion for Summary Judgment Exh. N.

Nancy Christy states that she received the cover letter and the check, but does not recall receiving the policy the letter states was enclosed. *See* N. Christy Depo. at 46, 51. Both of the Christys believed that the vessel had a navigational limit which included the Caribbean. *See id.* at 52; *See* G. Christy Depo. at 48–49.

On June 25, 1997, Blue Water Insurance, Inc. sent a facsimile to T.L. Dallas & Co., Ltd. at the request of Nancy Christy to have George Christy listed as an additional named insured under the policy. *See* Spink Depo. at 43–45. Confirmation of this change was received on July 1, 1997. *See* Motion for Summary Judgment Exh. P. George Christy's prior conviction was not disclosed. The underwriting agent at T.L. Dallas states that he would not have agreed to issue any policy had he known of the conviction. *See* Usher Aff. at ¶ 24.

In October 1997 George Christy departed with the vessel and sailed to the Bahamas after being separated from Nancy Christy. *See* G. Christy Depo. at 53. On February 9, 1998, the boat sank approximately ten miles off the northwest corner of Jamaica. *See id.* at 61. After telephoning the company on February 9, George Christy wrote a letter to Blue Water Insurance, Inc. on February 10, 1998 to advise it of the loss. *See* Motion for Summary Judgment Exh. Q. On February 16, 1998, Blue Water Insurance, Inc. sent a facsimile to T.L. Dallas & Co., Ltd. confirming the reduced navigational limits and asking how T.L. Dallas & Co., Ltd. wished to proceed. *See id.* at Exh. R. On March 17, 1998, the claims manager at T.L. Dallas & Co., Ltd. asked whether the Christys offered any explanation for the vessel's location. *See id.* at Exh. S. Blue Water Insurance, Inc. requested an explanation from Nancy Christy via electronic mail on April 24, 1998 as to the vessel's location, but the representative at the company states that Christy did not respond to this

request. *See id.* at Exh. U; *see* Spink Depo. at 56–57.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). When the party moving for the summary judgment bears the burden of persuasion on the issue at trial, its showing must sustain the burden as well as demonstrate the absence of a genuine dispute. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 331–32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Therefore, the moving party must satisfy both the initial burden of production on the summary judgment motion, by showing that no genuine dispute exists as to any material fact, and the ultimate burden of persuasion on the claim, by showing that it would be entitled to a directed verdict at trial. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989); *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron & Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## III. Discussion

Plaintiff has filed the instant motion for summary judgment on three grounds: (1) the policy is void because the Defendants failed to disclose material information re-

garding George Christy's criminal background; (2) the policy is void because the Defendants breached the navigational limits warranty; and (3) Spink and Blue Water Insurance, Inc. were the agents of the Defendants, and as such their acts and knowledge are attributable to the Defendants.

### A. Failure to Disclose Criminal Conviction

Plaintiff contends that pursuant to the doctrine of *uberrimae fidei*, a person seeking marine insurance coverage must disclose all material facts at the application stage of the process. If a material misrepresentation or omission is made, regardless of intent, the insurance policy must be declared void. In this case, Plaintiff asserts, Nancy Christy's failure to disclose the material fact of George Christy's criminal conviction in 1985 is grounds for voiding the insurance policy as a matter of law. The Court finds that this argument is without merit for the reasons stated below.

The Court agrees with Plaintiff's statements regarding the general law in this area. As stated by the Fifth Circuit, "[n]othing is better established in the law of marine insurance than that 'a mistake or commission material to a marine risk, whether it be wilful or accidental, or result from mistake, negligence or voluntary ignorance, avoids the policy.'" *Gulfstream Cargo, Ltd. v. Reliance Ins. Co.*, 409 F.2d 974, 980 (5th Cir.1969) (citing to 3 Couch Insurance, at p. 2568). "*Uberrimae fidei* requires parties to a maritime insurance contract to deal in utmost good faith. The insurance applicant must voluntarily and accurately disclose to the insurance company all facts which might have a bearing on the insurer's decision to accept or reject the risk ... This duty to make full disclosure has been accepted in the Eleventh Circuit as a firmly entrenched precedent." *Certain Underwriters at Lloyds, London v. Giroire*, 27 F.Supp.2d 1306, 1311–12 (S.D.Fla.1998) (citations omitted). A material fact is described as follows: "[u]nder federal law, 'materiality' is defined as 'that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk.'" *Id.* at 1312.

In this case, Plaintiff contends that George Christy's arrest at sea in 1985 while acting as captain of a vessel, and subsequent conviction in federal district court for possession of marijuana and conspiracy to distribute marijuana, are material facts which should have been disclosed by Nancy Christy when she completed the policy application. In support of this assertion, Plaintiff has submitted the affidavit of B.A. Usher, an employee of T.L. Dallas &. Co., Ltd., who states that the company would not have issued the policy had it known of Christy's prior arrest and conviction. *See* Usher Aff. at ¶ 24. Therefore, Plaintiff contends, the policy must be declared void as a matter of law for failure to disclose this material fact.

The Court is unpersuaded by this argument for two reasons. First, the Court has reviewed the cases cited by the Plaintiff in its motion. In the cases in which summary judgment was granted on this basis, there was not merely an omission of fact; there was a material misrepresentation made by the party to be insured. In *Gulfstream Cargo, Ltd.*, for example, the party seeking insurance misrepresented the vessel as in good repair when in fact that party knew facts which demonstrated "spectacular unseaworthiness." *See Gulfstream Cargo*, 409 F.2d at 974–79. Similarly, in *Giroire*, the insurance policy contained the false statement that the boat would not be used for racing when in fact the boat was damaged during a race. *See Giroire*, 27 F.Supp.2d at 1308–09. In *Northfield Ins. Co. v. Barlow*, one insured party misrepresented his experience as a naval commander, his training as a certified navigator, his qualifications to operate a vessel, his application for an unlimited license, his driver's license and driving history, the status of his captain's license, his disability status and his marine loss histo-

ry. *See Northfield,* 983 F.Supp. 1376, 1381–82 (S.D.Fla.1997).

■ The Court does not find that the facts at issue in this case are similar to the facts presented in the cases cited by the Plaintiff. In addition, even if the facts were more similar, the Court is not persuaded that this issue should be declared material as a matter of law. The application completed by the Christys specifically requests information regarding any "violations/suspensions (including auto) in last 5 years." *See* Motion for Summary Judgment Exh. A. This request for information likely led the Christys, and leads this Court, to the conclusion that convictions older than five years were not considered material or important. Otherwise, there would be no specification of five years only. The Court finds therefore, that the conviction is not "material" as a matter of law such that the doctrine of *uberrimae fidei* should apply to void the policy. Therefore, Plaintiff's request for summary judgment on this ground is denied.

### B. Navigational Limits Warranty

Plaintiff contends that summary judgment should be granted alternatively because the vessel was outside of the navigational limit contained in the policy at the time it sank. In support of this argument, Plaintiff cites to the strict construction of express warranties under federal law. In addition, Plaintiff contends that Blue Water Insurance, Inc. was an agent of the Defendants; as such any knowledge of Blue Water Insurance, Inc. and its employee, Donald Spink, should be imputed to the Defendants.

Defendants advance multiple arguments in response to this argument. First, Defendants state that nowhere in the policy is there language stating that insured shall not received coverage if the vessel is outside of the navigational limits. Second, the policy is vague and confusing. The "cover note" to the policy includes the language "Navigational Limits: Atlantic and Mediterranean," although Spink has a "declarations page" in his file indicating the limits as "Navigational Limits: Atlantic Crossing to the Mediterranean." Defendants contend that the inclusion of "to" appears to offer the Defendants greater coverage than the first description, and is confusing as well. For example, does it include stops along the way to the Mediterranean, or upon the return? Does it include islands in the Atlantic?

In addition, Defendants state that there is a "Navigational Endorsement" attached to the Amended Complaint as Exhibit B which contains in five of the six listed zones coverage for the area of the Caribbean. Defendants state that there is another endorsement to the policy entitled the "Caribbean Named Windstorm Endorsement" which Defendants state is attached to the response as Exhibit B as it appears to have been omitted from the insurance policy attached to the Amended Complaint. This endorsement allegedly provides for a deductible in the event of a windstorm in the Caribbean area. Defendants contend that this endorsement demonstrates that there was no intent to exclude the Caribbean area from coverage. As no later endorsement was sent out to delete navigational coverage from the Navigational Endorsement attached to the Amended Complaint or the Caribbean Named Windstorm Endorsement allegedly attached to the response as Exhibit B, the policy affords coverage for the vessel in the Caribbean.

In the alternative, Defendants argue that even if there was a breach of the navigational limits, this breach was that of George Christy only, not Nancy Christy. George and Nancy Christy had a falling out and were living apart. Nancy Christy wanted the boat to be sold, and accordingly instructed George Christy to keep the boat in Sarasota, Florida. George Christy, Defendants contend, took the boat without Nancy Christy's consent, and went to Jamaica without Nancy Christy's knowledge. Defendants have enclosed two affidavits in support of these facts.

Defendants contend that state law is applicable here because there is no entrenched principal of federal admiralty law on point. Defendants assert that under state law, where the policy does not expressly provide for joint coverage, a breach of warranty such as the breach of the navigational limits, does not bar the innocent party from recovery. This is true because where the policy is silent as to whether it is joint or several, the Court should presume under Florida law that it is several. Thus, George Christy's actions should not act as a bar to Nancy Christy's recovery, and it is not appropriate for the Court to grant summary judgment in this action as to Nancy Christy.

As for the agency issue raised by the Plaintiff, Defendants state that they do not contest this issue. In particular, Defendants state that they "do not rely on a claim that Blue Water or its employee Donald Spink are the agents of the Plaintiff, and do not, therefore, contest this issue." See Response to Motion for Summary Judgment at 12.

■ Upon careful review of both the arguments advanced by the parties and the cases cited, the Court finds it appropriate to grant summary judgment on the ground that Defendants breached the navigational limits warranty. As stated by the Plaintiff, federal courts, including the Eleventh Circuit, construe warranties such as the navigational limitation narrowly, holding that the breach of such a warranty will release the insurance company from liability. See Lexington Ins. Co. v. Cooke's Seafood, 835 F.2d 1364, 1366 (11th Cir. 1988) ("Lexington correctly notes that admiralty law requires the strict construction of express warranties in marine insurance contracts; breach of the express warranty by the insured releases the insurance company from liability even if compliance with the warranty would not have avoided the loss." (citations omitted)).

In this case, the contract provided for coverage of the East Coast of the United States only. See Motion for Summary Judgment Exh. K. Initially, in April 1997, Nancy Christy requested information regarding a change in her policy to include the Caribbean. See id. at Exh. H. Blue Water Insurance, Inc. provided this information the same day, in the form of multiple quotes sent by facsimile. On May 27, 1997, however, Christy sent a short letter stating that "for the next few months [the vessel] will be kept in a marina in Sarasota, FL." See id. at Exh. J. Christy went on to request a premium reduction on this ground. See id. Blue Water Insurance, Inc. took the requested action. Plaintiff points to no additional written request to alter this policy after the May 27, 1997 letter. In addition, she received and cashed the check sent by Blue Water Insurance, Inc. after the navigational limitation change was put in effect. Therefore, the Court finds that pursuant to Lexington's mandate that marine insurance contracts be strictly construed, the navigational limitation warranty should be enforced as requested by the insureds, and as written by Blue Water Insurance, Inc. and the Plaintiff.

The Court turns to each of the issues raised by the Defendants in opposition to the summary judgment motion. Defendants contend that there is no language in the policy stating that the insureds will not receive coverage if the vessel is outside of the navigational limits; as such, Defendants state that "although insurance policies in general have a reputation of being cryptic, the one issued by the Plaintiff La Reunion perhaps sets the standard." See Response to Motion for Summary Judgment at 7.

The Court does not agree with the assertion advanced by the Defendants. The term "navigational limits" means exactly that: there is a navigational limitation which includes the locations listed in the policy. There is nothing cryptic about this language at all. Further, it is clear that Nancy Christy understood what the navigational limitation meant; she herself wrote to Blue Water Insurance, Inc. to

request information on changing her coverage to include different locations from the original request of coverage for the Atlantic Ocean and the Mediterranean Sea. *See* Motion for Summary Judgment Exhs. H & J.

In their second argument, Defendants assert that the policy is vague and confusing. In particular Defendants state the "cover note" to the policy includes the language "Navigational Limits: Atlantic and Mediterranean" while the "declarations page" indicates that the limits as "Navigational Limits: Atlantic Crossing *to* the Mediterranean." Defendants assert that these two statements are different, the second appearing to indicate that the Defendants potentially have an ability to stop at various other locations on their trip over or their return. The Court finds no reason to debate the issue of whether the navigational limits of the Atlantic and the Mediterranean include a stop in the Caribbean regardless of how this navigational limit is worded. The facts are clear that all parties understood that the navigational limits were to be changed from this coverage on Nancy Christy's request. She herself sent a letter to Blue Water Insurance, Inc. stating that she did not plan to take the vessel across the Atlantic Ocean due to motion sickness problems. *See* Motion for Summary Judgment Exh. H. From the fact that she cashed the refund check of $116.00, the Court gleans that at a minimum she knew that the policy navigational limits had been changed. Therefore, the Court finds that the issue of what was meant by "Atlantic and Mediterranean" versus "Atlantic to the Mediterranean" is not relevant to this discussion.

Defendants' third argument is based on the "Navigational Endorsement" attached to the Amended Complaint as Exhibit B. Defendants contend that in five of the six zones, Plaintiff would be obligated to provide coverage; as this is an amendment to the policy, Defendants should receive coverage. The Court has reviewed the Navigational Endorsement in question, and

finds that it does not support the argument advanced by the Defendants because the endorsement lists generally the potential coverage under several separate zones; it is not an explicit offering of coverage to the insured in all of the zones. This is confirmed by the first page of the policy, which states expressly "Navigational Limits: Atlantic & Mediterranean." *See* Amended Complaint Exh. B. Therefore, the Court does not find that the "Navigational Endorsement" at issue is a separate basis for coverage under the policy.

Defendants state that there is an additional endorsement to the policy entitled the "Caribbean Named Windstorm Endorsement" which they attach as Exhibit B. Defendants state that because this endorsement provides coverage in the event of a storm in the Caribbean, this demonstrates that they have coverage for the vessel loss in the Caribbean. First the Court notes that the Defendants have not in fact attached this endorsement to their response, and as such the Court is unable to review it. However, even a description of this endorsement demonstrates to the Court that it is not relevant in this matter. The vessel in question was not lost during a storm; therefore, the coverage afforded during a storm is not relevant to the instant case. Defendants admit this in their response, stating that "this provision has no relevance to the loss of the boat." *See* Response to Motion for Summary Judgment at 9. As this provision is not related to the instant loss, the Court does not find it relevant to the issue of the navigational limits. The Court is not persuaded that coverage in the event of a storm demonstrates the intended navigational limits where there is an otherwise express statement regarding the same.

The final argument made by the Defendants is that even if the navigational limitation warranty is found to have been breached, this breach was committed by George Christy only, and should not bar recovery by Nancy Christy. Defendants state that where the policy does not speci-

fy whether it is joint or several, the Court should presume that coverage is several under state law. Where coverage is several, an innocent co-insured such as Nancy Christy should not be barred from recovery for the acts of her husband. Defendants contend that state law should apply in this area rather than federal law because there is no federal marine insurance law on point.

■ The general rule regarding which law to apply in a marine insurance contract is that unless there is a federally established admiralty law, state law should apply. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 316, 75 S.Ct. 368, 99 L.Ed. 337 (1955). The question is therefore whether the federal courts have addressed the issue of a navigational limits warranty in a marine insurance contract. As stated in *Home Ins. Co. v. Vernon Holdings,* 1995 AMC 369, 372 (S.D.Fla. 1994):

> Under Eleventh Circuit precedent, federal admiralty law, not state law, does control. In *Lexington Ins. Co. v. Cooke's Seafood,* in which a navigation limits warranty confined coverage to instances where the insured vessel was traveling within 100 miles of the shoreline, the Eleventh Circuit ruled: 'admiralty law requires the strict construction of express warranties in marine insurance contracts; breach of the express warranty by the insured releases the insurance company from liability even if compliance would not have avoided the loss.' ... Hence, the Eleventh Circuit has established a federal admiralty rule requiring strict adherence to navigational limits warranties.

■ In addition, a Florida state appellate court reversed a lower state court opinion using state law to interpret a navigational limit warranty on the ground that "[s]tate law cannot be utilized to interpret a warranty in a marine insurance contract if the federal judiciary has established a rule as to the interpretation of that type of warranty." *Aetna Ins. Co. v. Dudney,* 595 So.2d 238, 239 (4th DCA 1992) (citations omitted). The Court agrees with both the opinions from the Southern District of Florida and the Florida District Court of Appeal that because the Eleventh Circuit has established a federal admiralty rule regarding the interpretation of a navigational limits warranty such as the one at issue in this case, federal law, rather than state law, should control. Defendants' argument that Nancy Christy should not be barred from recovery on the basis of state law is not persuasive. Accordingly, the Court finds, as a matter of law, that the Defendants breached the navigational limits warranty thereby voiding the policy's coverage.[1]

## IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment (Doc. No. 16) is **GRANTED.** The Clerk is **DIRECTED** to enter judgment in favor of the Plaintiff, **CLOSE** the case and terminate any pending motions.

---

1. Plaintiff has advanced an additional argument in support of summary judgment under an agency theory, arguing that because Blue Water Insurance, Inc. and Donald Spink are the agents of the Defendants, the company and Spink's knowledge should be imputed to the Defendants. In response, Defendants assert that they do not contest this issue because they "do not rely on a claim that Blue Water or its employee Donald Spink are the agents of the Plaintiff, and do not, therefore contest this issue." It appears to the Court that Defendants have misunderstood the thrust of this argument, as it would be an independent ground upon which to possibly grant summary judgment. The Court finds it unnecessary to address this issue because it finds that summary judgment should be granted for the reasons addressed above.