URSULA UNGARO, UNITED STATES DISTRICT JUDGE
*1156 THIS CAUSE is before the Court upon Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion"), D.E. 16, and Defendant's Motion for Summary Judgment ("Defendant's Motion" and together with Plaintiff's Motion, the "Motions"). D.E. 15. The Court has reviewed the Motions, the pertinent portions of the record and is otherwise fully advised in the premises. For the reasons discussed infra , Defendant's Motion is GRANTED and Plaintiff's Motion is DENIED.
I. Procedural Background
On October 31, 2018, the Court entered its scheduling order for pretrial conference and trial, setting a Motion deadline of March 22, 2019. D.E. 7. On February 14, 2019, Defendant, Geico Marine Insurance Company ("Geico"),[1] filed its motion for summary judgment. D.E. 15. One day later, Plaintiff, Alfredo Quintero ("Quintero"), filed his motion for partial summary judgment. D.E. 16. Quintero subsequently moved for an extension to respond to Geico's motion on grounds that certain depositions were outstanding, and given that the motion cutoff had not yet expired, the Court granted Quintero a minor extension until March 14, 2019 to respond to Geico's motion for summary judgment. D.E. 38. In that order, the Court stated:
Plaintiff SHALL FILE his response to Defendant's Motion for Summary Judgment by Thursday, March 14, 2019. NO FURTHER EXTENSIONS WILL BE GRANTED AND THE COURT WILL NOT CONSIDER ANY RESPONSES FILED AFTER THIS DATE.
Id. at 5 (emphasis in original).
Despite the Court's glaring warning that it would not consider responses filed after this date, Quintero filed his response to Geico's Motion on March 15, 2019, a day after the deadline the Court imposed for his response. D.E. 39. On this basis alone, and having found that Geico's Motion has merit, the Court would grant Geico's Motion and dismiss this action. See Fed. R. Civ. P. 41 ; Link v. Wabash R. Co. , 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (clarifying that Rule 41(b) permits a Court to dismiss an action sua sponte for failure to comply with court order). However, given the pendency of Quintero's motion for summary judgment and that his response was only a day late, the Court considers whether Quintero's Motion or his response to Geico's Motion demonstrates that there is a genuine dispute of material fact precluding summary judgment in Geico's favor; it does not.
II. Factual Background
Unless otherwise indicated, the following facts are undisputed.
A. Quintero's May 4, 2018 Conversation with Geico
Geico issued an insurance policy (the "Policy") to Quintero with a policy period of May 5, 2017 to May 5, 2018 for a 32-inch 2008 Renegade Boats Runabout (the "Vessel").
*1157 D.E. 15 ¶ 1; D.E. 15-3; D.E. 15-10 ¶ 5. On May 4, 2018, the day before the Policy period ended, Quintero contacted Geico regarding a declined charge on his credit card from Geico. D.E. 33-4. Geico informed Quintero that his policy was up for renewal and Geico's automatically debited future installments and renewal payments from the customer's card on file. Id. at 5. However, because payment was declined on Quintero's card, the payment was not taken. Id. at 5-6. After being told that Geico could not lower the amount owed, Quintero stated that Geico would "lose him as a customer." Id. at 14. Quintero did not pay the installment amount due on May 5, 2018, and on May 10, 2018, Geico sent Quintero a Notice of Policy Expiration, informing him that the Policy had expired as of May 5, 2018. D.E. 15-1.
B. May 25, 2018 Conversation with Geico & Reinstatement
On May 25, 2018, at approximately 7:28 A.M., Quintero called Geico to "pay his boat policy." D.E. 17-2 at 2. Geico informed him that his last policy payment had been due on May 5, 2018, and asked him if he wanted to reinstate his policy, to which Quintero responded that he did. D.E. 17-2 at 3. Before taking payment, Geico asked Quintero some questions regarding the status of the Vessel and Quintero responded that the Vessel had no damage, was "sound and seaworthy," that the last time he physically saw the Vessel was "every day," and the Vessel was currently in his house. Id. at 4. At the end of the conversation, Geico confirmed that the policy was reinstated and backdated to May 5, 2018. D.E. 17-2 at 14.
C. Theft & Investigation
On May 25, 2018, at 2:43 PM, approximately seven hours after Quintero called Geico to reinstate his Policy, Quintero reported the theft of the Vessel and trailer to the Broward County Sherriff's Office. D.E. 15-4. The same day, at approximately 6:30 p.m., Quintero called Geico to make a claim under the Policy for the stolen Vessel, with a date of loss of May 25, 2018. D.E. 17-3. Geico acknowledged Quintero's claim and immediately began an investigation on the same day. D.E. 15-5. On July 13, 2018, Geico sent Quintero correspondence, advising that the investigation was ongoing and that coverage for the loss would be determined after receipt of the full police investigation report. D.E. 15-6.
D. Final Police Report & Non-Coverage
On January 17, 2019, the Broward County Sheriff's Office issued a final report. D.E. 15-7. In the report, the reporting officer stated that video-surveillance footage from a neighboring home showed a black pickup truck hauling the trailer and the Vessel away at 4:58 a.m., on May 25, 2018, approximately three hours before Quintero called Geico to reinstate the Policy. D.E. 15-7 at 3. On January 30, 2019, Geico sent Quintero a rescission letter and denial of coverage. D.E. 15-8. Geico explained that it was denying coverage for the Vessel and rescinding the policy ab initio because Quintero misrepresented the condition of the Vessel and that that he had possession of it when he called to reinstate his policy on May 25, 2018, which Geico stated was material to its decision to insure the Vessel. Id.
III. LEGAL STANDARD
Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When determining whether the moving party has met this burden, the Court must *1158 view the evidence and all factual inferences in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co. , 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ; Rojas v. Florida , 285 F.3d 1339, 1341-42 (11th Cir. 2002).
The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial." See Celotex Corp. v. Catrett , 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; Poole v. Country Club of Columbus, Inc. , 129 F.3d 551, 553 (11th Cir. 1997) ; Barfield v. Brierton , 883 F.2d 923, 933 (11th Cir. 1989).
If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. Envntl. Def. Fund v. Marsh , 651 F.2d 983, 991 (5th Cir. 1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co. , 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. Impossible Elec. Techs., Inc. v. Wackenhut Protective Sys., Inc. , 669 F.2d 1026, 1031 (5th Cir. 1982) ; see also Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").
Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. Adickes , 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying the relevant legal questions raised by the pleadings or are not otherwise in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. Brunswick Corp. v. Vineberg , 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. Liberty Lobby, Inc. , 477 U.S. at 255, 106 S.Ct. 2505.
IV. Analysis
A. The Parties' Grounds for Summary Judgment
Quintero argues that he is entitled to partial summary judgment on all of Geico's affirmative defenses and as to whether the Policy was cancelled or not renewed. D.E. 16. Specifically, Quintero argues that there is no genuine dispute that Geico failed to comply with the Policy's nonrenewal and cancellation provisions, that Quintero's coverage never lapsed, and therefore the theft of his Vessel was a covered loss under the Policy. D.E. 16.
Geico also moves for summary judgment, arguing that Quintero's material misrepresentations as to the status of the Vessel on May 25, 2018 preclude any recovery on three related grounds. First, Geico argues that under the federal common law doctrine of uberrimae fidei , the Policy was void ab initio when Quintero misrepresented the status of the Vessel during his phone call with Geico to reinstate the Policy on May 25, 2018. Second, Geico argues that the plain language of the *1159 Policy precludes coverage ab initio where an insured "omits, conceals, misrepresents, swears falsely, or commits fraud in reference to any material matter relating to this insurance before or after any loss." D.E. 15 at 5. Lastly, Geico argues that under Florida Statute § 627.409, Quintero's misrepresentation prevents recovery under the Policy because his misrepresentation is material to Geico's acceptance of the risk under the Policy and Geico would not have issued the Policy had it known the boat was stolen
Accordingly, the Court focuses its inquiry on Geico's Motion because Geico moves on a dipositive issue: whether the Policy is void ab initio . As Quintero's declaratory judgment claims depend upon coverage for the stolen Vessel under the Policy, if the Policy is void ab initio , then Quintero's claims fail as a matter of law. The Court ultimately concludes that Quintero's misrepresentations regarding the status of the Vessel void the policy ab initio under uberrimae fidei . As such, the Court does not address Quintero's remaining arguments, although the court has reviewed them and finds that they do not preclude summary judgment in Geico's favor.
B. Uberrimae Fidei
i. Standard
The doctrine of uberrimae fidei applies to marine insurance and "requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk." HIH Marine Servs., Inc. v. Fraser, 211 F.3d 1359, 1362 (11th Cir. 2000). As explained by the Fifth Circuit:
Nothing is better established in the law of marine insurance than that 'a mistake or commission material to a marine risk, whether it be willful or accidental, or result from mistake, negligence or voluntary ignorance, avoids the policy ... 'Concealment,' in the law of marine insurance, is the failure to disclose any material fact or circumstance in relation to the subject matter of the contract which may increase the liability to loss, or affect the risk or obligation assumed, and which is, in fact or law, within or ought to be within, the knowledge of one party, and of which the other party has no actual or presumptive knowledge. In the case of marine insurance, the insured must disclose all facts material to the risk, and in default of such duty the contract may be avoided by the insurer ... the policy never attaches and is void, for the reason that the risk assumed is not the one intended to be assumed by the parties.
Northfield Ins. Co. v. Barlow , 983 F. Supp. 1376, 1380 (N.D. Fla. 1997) (quoting Gulfstream Cargo, Ltd. v. Reliance Ins. Co. , 409 F.2d 974, 980-81 (5th Cir.1969) ) (citations omitted) (emphasis added).
ii. Uberrimae Fidei Applies
The parties' dispute whether uberrimae fidei applies to this action as a matter of law. Geico argues that uberrimae fidei applies to this Policy because "it is well-settled that the marine insurance doctrine of uberrimae fidei is the controlling law of this circuit." HIH Marine Servs., 211 F.3d at 1362. Notwithstanding this settled legal principle, Quintero, relying GEICO Marine Insurance Company v. Shackleford , 316 F.Supp.3d 1365 (M.D.Fla.2018), argues that Quintero and Geico contracted out of uberrimae fidei . D.E. 39 at 11. In Shackleford , the Court found that the Policy language imposed different obligations on the insured than uberrimae fidei and therefore, the parties had "contracted around" uberrimae fidei . As the policy language in the subject Policy is almost identical to the language in Shackleford , Quintero argues it should control over uberrimae fidei :
*1160 Section V - General Conditions, J. Fraud and Concealment
There is no coverage from the beginning of this policy if an "insured" has omitted, concealed, misrepresented, sworn falsely, or committed fraud in reference to any material matter relating to this insurance before or after any loss.
D.E. 15-3 at 16, 30.
The language in this Policy is similar to Shackleford, but the Court is unpersuaded by Quintero's argument. The Court also disagrees with the Shackleford court,[2] which relies entirely on King v. Allstate Ins. Co. , 906 F.2d 1537, 1542 (11th Cir. 1990), an easily distinguishable decision. Like Shackleford, in King the subject insurance policy contained a provision that voided the policy "only if the insured intentionally concealed or misrepresented a material fact during the application process." King, 906 F.2d at 1539 (emphasis added). Given the contrast between the type of misrepresentation needed to void the policy under the policy language and uberrimae fidei, the Eleventh Circuit held that the parties had "contracted around" uberrimae fidei . King , 906 F.2d at 1541.
In contrast to King , here the Policy language does not run counter to uberrimae fidei ; there is no requirement that any misrepresentation or omission be intentional. Instead, the language of this Policy mirrors the obligations imposed by uberrimae fidei . Compare D.E. 15-3 at 16 ("There is no coverage from the beginning of this policy if an has omitted, concealed, misrepresented, sworn falsely, or committed fraud in reference to any material matter relating to this insurance before or after any loss."), with Northfield Ins. Co., 983 F. Supp. at 1379-80 (finding holding that "the parties did not contract around the principles of uberrima fidei" because relevant clause in the insurance Policy and application provided "Any misrepresentations ... will render insurance coverage null and void from inception ...") (emphasis added); see also Certain Underwriters at Lloyds, London v. Giroire , 27 F. Supp. 2d 1306, 1312 (S.D. Fla. 1998) (holding that "the language of the insurance policy itself is consistent with the doctrine of uberrimae fidei." Because the relevant clause stated that any misrepresentations "will render insurance coverage null and void from inception. Thus the parties clearly intended the obligations of uberrimae fidei to apply to this insurance transaction.") (emphasis added); cf. Axis Reinsurance Co. v. Henley, No. 4:08CV168-WCS, 2009 WL 3416248, at *14 (N.D. Fla. Oct. 22, 2009) (finding uberrimae fidei did not apply to marine insurance policy because relevant language of the Policy voided coverage from inception only if the insured "intentionally conceal [ed] or misrepresent[ed] any material fact") (emphasis added).
*1161 Further, the King court sought to distinguish itself from binding Fifth Circuit precedent applying uberrimae fidei on grounds that in that case, "there was, in fact, no dispute as to which law to apply ... th[at] court did not confront any issue relating to the policy vis-a-vis either state or maritime law." King 906 F.2d at 1541 (emphasis added). Similarly, in Shackleford "neither party adresse[d] whether federal or Florida law governs the interpretation of the policy." Here, there are no such issues, the Policy expressly states:
This policy is to be construed under United States federal admiralty law. In the absence of controlling United States federal admiralty law, this policy is to be construed under the laws of the state, territory or possession listed on the Declarations Page as "your" address of record, without regard to that jurisdiction's rules on choice of law.
D.E. 15-3 at 31 (emphasis added). Uberrimae fidei is "the controlling [United States federal admiralty] law of this circuit." HIH Marine Servs., 211 F.3d at 1362. Thus, pursuant to its plain language, the Court must construe the Policy in-line with uberrimae fidei . See Steelmet, Inc. v. Caribe Towing Corp. , 747 F.2d 689, 695 (11th Cir. 1984), on reh'g , 779 F.2d 1485 (11th Cir. 1986) ("The general rule of marine insurance, requiring full disclosure, is well settled in this circuit, and as a clear rule of maritime law it is the controlling federal rule even in the face of contrary state authority."); All Underwriters v. Weisberg , 222 F.3d 1309, 1312 (11th Cir. 2000) ("Federal courts have long considered actions involving marine insurance policies to be within the admiralty jurisdiction of the federal courts and governed by federal maritime law."). Accordingly, the Court concludes that uberrimae fidei applies to the Policy as a matter of law.[3]
iii. Uberrimae Fidei Voids the Policy
Uberrimae fidei renders an insurance policy void ab initio if the insured misrepresents, omits, or conceals a fact that is material to the insurer. Steelmet, Inc. , 747 F.2d at 695. "Materiality under federal maritime law is broader in application than Florida law ... Under federal law, 'materiality' is defined as 'that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk.' " Giroire , 27 F. Supp. 2d at 1312-13 (quoting Kilpatrick , 795 F.2d at 942-43 ) (other citations omitted).
Geico argues that it is entitled to summary judgment because Quintero made material misrepresentations as to the status of the Vessel when he reinstated the Policy with Geico on May 25, 2018. In support, Geico points to the recorded transcript from Quintero's conversation with Geico:
Q. I have to ask you some questions, then we can make a payment and reinstate the policy, okay?
A. Sure.
Q. First off, is the boat -- does the boat have any damages or is it - has it been damaged?
A. No, its beautiful.
*1162 Q. Okay, and is it seaworthy?
A. Sound and seaworthy ... it's in good condition ...
Q. Okay. And when was the last time you physically saw your boat?
A. Every day. It's in my house.
D.E. 17-2 at 3-4. (emphasis added).
Based on the above statements, Geico argues that when he called to reinstate his Policy on May 25, 2018, Quintero failed to disclose that the Vessel had been stolen, and affirmatively misrepresented that he had seen the Vessel that day and that it was currently in his house, in violation of the duty of full disclosure under uberrimae fidei . Quintero provides no contrary evidence that these statements do not constitute misrepresentations or omissions, i.e. that the Vessel was actually in his house or in good condition at the time he made the statements.[4] See Giroire , 27 F. Supp. 2d at 1312-13 ("In the context of marine insurance, "concealment" is the failure to disclose any material fact or circumstance in relation to the subject matter of the contract which may increase the liability to loss, or affect the risk assumed, and which is, in fact or law, within or ought to be within, the knowledge of one party ....") (quotation and internal quotation marks omitted).
As to materiality, Geico asserts that whether the Vessel was in Quintero's possession or in good condition are material because they influence the risk that Geico accepted in reinstating the Policy. In support, Geico points to an affidavit by its claims adjuster, Jeffrey O'Keefe ("O'Keefe"), asserting that had it "known the vessel was already stolen at the time Quintero requested to re-instate the policy, [Geico] would not have re-instated the expired/non-renewed marine policy." D.E. 15-10 ¶ 24; see Giroire, 27 F. Supp. 2d at 1312-13 (To establish materiality, Lloyds provided the unrebutted affidavit ... [in which Lloyds] ... testifies that had Lloyds received a truthful "yes" answer to the question whether the boat was used for racing, Lloyds would have declined coverage. In light of such uncontradicted evidence, the Court finds that the misrepresentation was material as a matter of law.").[5] In addition, during the May 25, 2018 call Geico asked Quintero about the status and condition of his Vessel before reinstating the Policy, indicating that Geico considered these facts material to the calculation of the risk of the Policy. See, e.g., Gulfstream , 409 F.2d at 982 (explaining that insurer had "absolute right to demand full, open, honest, complete, accurate disclosure of facts then well known which bore directly upon the condition of the vessel.") (emphasis added);
*1163 State Nat. Ins. Co. v. Anzhela Explorer, L.L.C. , 812 F. Supp. 2d 1326, 1356 (S.D. Fla. 2011) (holding that whether bulkheads were watertight was material under uberrimae fidei because it affected the condition of the boat and the risk the insurer undertook in insuring the boat).
Quintero responds that there is a genuine dispute as to whether these misrepresentations and omissions were material because Quintero called Geico to inform it that his Vessel was stolen on the same day he called Geico to reinstate his Policy. D.E. 39 at 8. Therefore, Quintero argues that Geico "had knowledge of the purported material misrepresentation." Id. This does not create a genuine issue of fact as to materiality. First, Quintero did not disclose that when he called to reinstate the Policy, the Vessel had already been stolen. D.E. 17-3. Thus, Geico did not "have knowledge" of the misrepresentation. Second, the materiality of a misrepresentation turns on whether it would affect insurer's calculation of the risk of insuring the Vessel. See AIG Centennial Ins. Co. v. O'Neill , 782 F.3d 1296, 1304 (11th Cir. 2015). Quintero made a claim for the stolen Vessel approximately seven hours after he misrepresented its status and condition; information upon which Geico relied in calculating the risk of insuring the Vessel. The fact that Quintero later informed Geico that the Vessel was stolen does not erase his prior misrepresentations and require Geico to honor a Policy that was void ab initio and insure a stolen Vessel. See HIH Marine Servs., Inc., 211 F.3d at 1363 ("The central principle of uberrimae fidei , however, is that the insured bears the burden of full and voluntary disclosure of facts material to the decision to insure ... the law has placed the burden of good faith disclosure with the person in the best position to know all the facts: the insured.").
Quintero also points to O'Keefe's deposition to argue that Geico admitted that it had "no evidentiary basis to conclude that the Plaintiff in fact had knowledge that his Boat had been stolen when he called to pay the Policy premium." D.E. 39 at 4. This argument is similarly unpersuasive. Whether Quintero had actual knowledge of the state of his Vessel is irrelevant; the question is whether Quintero omitted or misrepresented material information when asked about the status of his Vessel on May 25, 2018. See Steelmet, 747 F.2d at 695 (holding that a material misrepresentation, even if it is a result of "mistake, accident, or forgetfulness, is attended with the rigorous consequences that the policy never attaches and is void") (internal quotation marks omitted); AGF Marine Aviation & Transp. v. Cassin , 544 F.3d 255, 262 (3d Cir. 2008) ("A party's intent to conceal, or lack thereof, is irrelevant to the uberrimae fidei analysis.") (citing Steelmet , 747 F.2d at 695 ) (emphasis added).; Giroire , 27 F. Supp. 2d at 1312 ("Under uberrimae fidei a material misrepresentation on a marine insurance policy, even if innocently made, is grounds for rescission."). Uberrimae fidei imposes a "heavy burden " upon Quintero to disclose all material facts about the Vessel that were within his knowledge or "ought to be within " his knowledge. Gulfstream Cargo, 409 F.2d at 980-8 (emphasis added). Indeed, even if Geico had not directly asked Quintero about the status of his Vessel, the Eleventh Circuit has even extended the duty to disclose under uberrimae fidei "to those material facts not directly inquired into by the insurer." HIH Marine Servs., Inc. , 211 F.3d at 1362.
Accordingly, the Court agrees that Quintero's misrepresentations and concealment are material and void the Policy ab initio pursuant to the "well-entrenched" doctrine of uberrimae fidei . Quintero cannot make a claim for a loss under a void Policy and therefore his declaratory *1164 judgment claims fail and the Court must enter summary judgment in favor of Geico. As the Court has concluded that the Policy is void ab initio under uberrimae fidei, the Court does not address Quintero's remaining arguments as to the Policy or his waiver arguments under Florida law.[6] See HIH Marine Servs., Inc. , 211 F.3d at 1362 ("[W]e focus on the issue of material misrepresentation because a finding of material misrepresentation in this marine insurance case voids the policy and renders immaterial the appellants' arguments on insurable interest and waiver and estoppel.") (emphasis added); Giroire , 27 F. Supp. 2d at 1312 ("There has been no indication from the Eleventh Circuit that affirmative defenses such as waiver and estoppel may be used to avoid the time-honored obligation of good faith and full disclosure.").
C. Cancellation/Renewal of the Policy
Although the Court finds that Geico is entitled to summary judgment, in the interest of completeness, the Court briefly addresses Quintero's contentions regarding whether the Policy remained in effect on May 25, 2018 or was cancelled, renewed, or expired. Throughout his Motion and in response to Geico's Motion, Quintero makes much of the fact that he never "expressed orally, writing, or otherwise, that he did not seek to have the Policy in place during the interim period." D.E. 16 ¶ 3. He goes so far as to move for sanctions because "Mr. Quintero never stated that he wanted to cancel the policy or directly note or intimate that he wanted to cease coverage with GEICO Marine Insurance Company." D.E. 44. Although not entirely clear, Quintero appears to be arguing that his Policy was still effective from the date of his first call to Geico on May 4, 2018 to the date his Vessel was stolen on May 25, 2018, making the theft of the vessel a covered loss under the Policy.[7] But, Quintero never explains the relevance of this position with regard to his obligations under uberrimae fidei ; his sole argument against the application of uberrimae fidei is that the parties' contracted around it. Even if Quintero is correct that the Policy never lapsed, Quintero's misrepresentations regarding the status of the Vessel during the May 25, 2018 call, void the Policy ab initio , regardless of whether the Policy was renewed, cancelled, or expired because Quintero failed to fully and voluntarily disclose to Geico all facts material to its decision to insure against theft of the vessel. See HIH Marine Servs., Inc. , 211 F.3d at 1362.
*1165 V. Conclusion
For the reasons discussed supra , it is
ORDERED AND ADJUDGED that Quintero's Motion, D.E. 16, is DENIED, and Geico's Motion, D.E. 15, is GRANTED. Quintero's Complaint is DISMISSED WITH PREJUDICE. The Court will separately enter judgment in favor of Geico pursuant to Federal Rule of Civil Procedure 58. It is further
ORDERED AND ADJUDGED that the case is CLOSED for administrative purposes. All hearings are CANCELLED; all other pending motions are DENIED AS MOOT.
DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of April, 2019.
ORDER
THIS CAUSE is before the Court upon Plaintiff's Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) and Motion for Relief from Judgment Pursuant to Fed. R. Civ. P. 60(b) (the "Motion"). D.E. 55. The Court has reviewed the Motion, the pertinent portions of the record and is otherwise fully advised in the premises. For the reasons discussed infra , the Motion is DENIED.
I. Background
A. Summary Judgment & Sanctions
On February 14 and 15, 2019 the parties filed cross-motions for summary judgment, and Plaintiff then moved for an extension to respond to Geico's motion on grounds that certain depositions were outstanding. Given that the motion cutoff had not yet expired, the Court granted Quintero a minor extension until March 14, 2019 to respond to Geico's motion for summary judgment. D.E. 38. In that order, the Court stated:
Plaintiff SHALL FILE his response to Defendant's Motion for Summary Judgment by Thursday, March 14, 2019. NO FURTHER EXTENSIONS WILL BE GRANTED AND THE COURT WILL NOT CONSIDER ANY RESPONSES FILED AFTER THIS DATE.
Id. at 5 (emphasis in original).
Despite the Court's explicit warning that it would not consider responses filed after this date, Quintero filed his response to Geico's Motion on March 15, 2019, a day after the deadline the Court imposed for his response. D.E. 39. Nevertheless, the Court entertained Quintero's Motion, but found it to be without merit as under the doctrine of uberrimae fidei , Quintero was responsible for the statements he made in renewing his policy with Geico.
While the cross-motions were pending, Plaintiff filed a motion for sanctions, arguing that Geico had misrepresented that the policy expired, that Geico took this position in bad faith in its Motions and was misrepresenting the state of affairs to the Court. D.E. 44. In his Motion for Summary Judgment and in opposition to Defendant's Motion, Plaintiff reiterated this allegation. The Court thoroughly considered the record and Plaintiff's argument and found it to be without merit. D.E. 53 at 15-16.
B. The Instant Motion
In the instant Motion, Plaintiff again reiterates that Geico's deposition testimony conflicts with this Court's findings that Plaintiff renewed his insurance policy, that the policy never lapsed, and that Geico would have renewed the policy regardless of whether the boat was stolen. D.E. 55. As a result, Plaintiff argues that the Court should reconsider its Order pursuant to Rule 59 and Rule 60, and find that:
as testified to by GEICO's corporate representative the Plaintiff did not request a cancellation or expiration of the Policy; that the Policy was never cancelled *1166 or non-renewed; that the Policy was in full force and effect on May 4, 2018 and until the theft occurred on May 25, 2018; that the Policy provided coverage for the theft and thereby the Plaintiff is entitled to final judgment accordingly; that the Plaintiff is entitled to common law or statutory interest for the breach of the insurance contract; that the Plaintiff and its counsel are entitled to an award of reasonable attorneys' fees and costs; that the Defendant perpetrated a fraud on the Court by knowingly relying upon an affidavit that it knew was perjurious and/or otherwise false; that pursuant to the common law doctrines of waiver or estoppel the Defendant forfeited any defense of material misrepresentation in accepting the Risk by at all times conveying that it would continue to accept premiums even though it was on notice of the putative material misrepresentation on the same day of the loss and every day thereafter, until it attempted to rescind the Policy some three-hundred (300) days later; and/or any other relief that this Court deems necessary and/or equitable.
D.E. 55 at 13.
II. Legal Standard
District courts "may set aside a final default judgment under Rule 60(b)." Safari Programs, Inc. v. CollectA Int'l Ltd. , 686 F. App'x 737, 743 (11th Cir. 2017). " Rule 60(b) lists a number of grounds for relief from a final judgment, including ... mistake, inadvertence, surprise, or excusable neglect, and any other reason that justifies relief." Id. (citing Fed. R. Civ. P. 60(b) ). The determination of excusable neglect is "is an equitable one, taking account of all relevant circumstances." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship , 507 U.S. 380, 381, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In Pioneer , the Supreme Court found four factors relevant in assessing excusable neglect: (1) the danger of prejudice to the [opposing party], (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." Pioneer , 507 U.S. at 395, 113 S.Ct. 1489.
"While Rule 59(e) does not set forth any specific criteria, the courts have delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." Williams v. Cruise Ships Catering & Serv. Int'l, N.V. , 320 F. Supp. 2d 1347, 1357-58 (S.D. Fla. 2004). In order to succeed on a Rule 59(e) motion, "the moving party must set forth facts or law of a 'strongly convincing nature' to induce the court to reverse its prior decision." Id. at 1358.
III. Analysis
Plaintiffs' arguments were all thoroughly addressed in the Court's order on the parties' cross-motions for summary judgment and the Court emphatically does not find that Plaintiff has set forth facts or law "of a strongly convincing nature." Moreover, Plaintiff points to no new evidence, effectively arguing that this Court misread the deposition testimony and/or that the deposition testimony was false. Plaintiff effectively seeks to relitigate every issue he raised in his motion for summary judgment; this is impermissible and arguably sanctionable. Thus, the Court finds that Plaintiff has not met his burden under Rule 59 of demonstrating manifest errors of law or fact or demonstrating that this Court has made a mistake pursuant to Rule 60. Therefore, there are no grounds for reconsideration or setting aside the judgment and the Motion is denied.
*1167 Nevertheless, for the sake of absolute clarity, the Court will briefly address each of Plaintiff's points below, with reference to the corresponding discussion in the Court's order on motion for summary judgment.
A. Whether the Policy Expired or Plaintiff Requested a Cancellation of the Policy is Irrelevant
Plaintiff argues that pursuant to the deposition testimony of Geico's representative, "Plaintiff did not request a cancellation or expiration of the Policy." D.E. 55. Consequently, Plaintiff argues that the Policy never lapsed and there was coverage for his stolen vessel. First, the Court disagrees with Plaintiff as the record does not demonstrate any genuine dispute as to this issue. Having exhaustively reviewed the deposition testimony, telephone transcripts and notice of expiration, the Court stated: "the Policy, the Notice of Expiration, and the recorded telephone transcripts indicate that the previous policy's term expired on May 5, 2018 and that Quintero called to reinstate his Policy on May 25, 2018 after the Vessel had been stolen." D.E. 53 at 16. The fact that Plaintiff disagrees with this Court's conclusion does not entitle him to an altered judgment.
Second and more importantly:
Quintero never explains the relevance of this position with regard to his obligations under uberrimae fidei ; his sole argument against the application of uberrimae fidei is that the parties' contracted around it. Even if Quintero is correct that the Policy never lapsed, Quintero's misrepresentations regarding the status of the Vessel during the May 25, 2018 call, void the Policy ab initio , regardless of whether the Policy was renewed, cancelled, or expired because Quintero failed to fully and voluntarily disclose to Geico insurer all facts material to the risk that Geico assumed when insuring the Vessel.
D.E. 53 at 16. Plaintiff still fails to explain the relevance of this argument to his obligations under uberrimae fidei .
B. Plaintiff's Waiver and Estoppel Arguments were Addressed and Found Meritless
Next, Plaintiff requests that the Court address his argument that Geico continued to accept premiums, waiving any material misrepresentations. But, the Court explained that under binding Eleventh Circuit precedent, uberrimae fidei voided the insurance contract at issue ab initio rendering Plaintiff's waiver and estoppel arguments immaterial. HIH Marine Servs., Inc. v. Fraser , 211 F.3d 1359, 1359 (11th Cir. 2000) ("[W]e focus on the issue of material misrepresentation because a finding of material misrepresentation in this marine insurance case voids the policy and renders immaterial the appellants' arguments on insurable interest and waiver and estoppel .") (emphasis added); Certain Underwriters at Lloyds, London v. Giroire , 27 F. Supp. 2d 1306, 1306 (S.D. Fla. 1998) ("There has been no indication from the Eleventh Circuit that affirmative defenses such as waiver and estoppel may be used to avoid the time-honored obligation of good faith and full disclosure .") (emphasis added).
Nevertheless, the Court briefly discussed the merits of these arguments:
Quintero asserts that Geico waived any denial of coverage because it "had knowledge" of the misrepresentation and because it continued to collect premiums and recognize the existence of the policy until January 2019. D.E. 39 at 11- 12; see Johnson v. Life Ins. Co. of Ga. , 52 So.2d 813 (Fla. 1951) (explaining that "when an insurer has knowledge of the existence of facts justifying a forfeiture *1168 of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver the Policy."). But, the Policy is not governed by Florida law, it is governed by "United States federal admiralty law." D.E. 15-3 at 1. As such, Quintero's argument relying on Florida law is not persuasive. See Giroire , 27 F. Supp. 2d at 1312 (Explaining that in the Eleventh Circuit, uberrimae fidei, and not Florida law, controlled the parties' obligations in marine insurance contracts, and therefore the insured's arguments that the insurer waived forfeiting the policy because it had constructive knowledge of material misrepresentation was not persuasive.).
D.E. 53 at 15.
C. There is No Evidence of Perjury Warranting Reconsideration
Lastly, the Court finds that Plaintiff's allegation that Geico committed perjury by providing fraudulent deposition testimony to be without merit. Plaintiff's sole basis for this claim is that Geico's affidavit, in which Geico affirms it would not have issued the policy had it known the condition of the boat, was "superseded by the deposition testimony that followed, which indicated that the subject policy was renewed without any underwriting consideration and without regard for the condition of the boat." D.E. 55 at 12.
First, the very deposition text Plaintiff cites undercuts its argument:
Q: Can you say it was material, sir, the insured's statements to the insurance company in the sense of the insurance company would not have issued - - or maintained the policy as of May 5th, 2018 forward but for the insured being subjected to some number of questions as posed on May 25th, 2018.
A: As a claims adjuster, I can't answer that. That's a question that would have to be answered by an underwriting manager .
DE 40-1 at 169 ¶ 12 (emphasis added).
Second, the Court did not rely exclusively on Geico's affidavit that the boat not being stolen was "material" to the reissuance of the Policy. "Materiality under federal maritime law is broader in application than Florida law ... Under federal law, 'materiality' is defined as 'that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk.' " Giroire, 27 F. Supp. 2d at 1312-13 (quotation omitted). As the Court noted, whether or not a vessel is stolen would plainly influence the mind of a prudent and intelligent insurer, regardless of whether Geico had provided an affidavit to that effect: "There is also no genuine dispute as to whether these facts are material to the calculation of the risk of insuring the Vessel; insuring a stolen Vessel is akin to insuring a loss." D.E. 53 at 8 n.2; See also Gulfstream Cargo, Ltd. v. Reliance Ins. Co. , 409 F.2d 974, 982 (5th Cir.1969) (explaining that insurer had "absolute right to demand full, open, honest, complete, accurate disclosure of facts then well known which bore directly upon the condition of the vessel.") (emphasis added); State Nat. Ins. Co. v. Anzhela Explorer, L.L.C., 812 F. Supp. 2d 1326, 1356 (S.D. Fla. 2011) (holding that whether bulkheads were watertight was material under uberrimae fidei because it affected the condition of the boat and the risk the insurer undertook in insuring the boat). That a vessel being stolen is material to the risk an insurer undertakes in insuring a vessel is simply common sense. Accordingly, the Court does not find Plaintiff's argument persuasive.
*1169 IV. Conclusion
For the reasons discussed supra , it is
ORDERED AND ADJUDGED that the Motion, D.E. 55, is DENIED.
DONE AND ORDERED in Chambers at Miami, Florida, this 26th day of June, 2019.

Defendant makes reference to BoatU.S. throughout its Motion, but neither party has explained BoatU.S.'s relationship to Geico. As both parties use "Geico" and "BoatU.S." interchangeably, as the parties assert that Geico and BoatU.S. jointly insured the Vessel, as the Policy and every other document provided as evidence in this action is labelled "Geico Marine Insurance", as "BoatU.S." is not a party to this litigation, and as the issue has no bearing on this Court's ruling, the Court only refers to Geico.

Even if the parties had contracted around uberrimae fidei , the Policy language at issue here provides Geico with a comprehensive right to void the Policy ab initio at any time before or after a loss in the case of a misrepresentation or omission with regard to "any material matter." D.E. 39 at 11. Although "material" is not defined in the Policy, the Policy is governed by federal admiralty law, which defines material as: "that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk." Kilpatrick Marine Piling v. Fireman's Fund Ins. Co. , 795 F.2d 940, 942-43 (11th Cir. 1986). As discussed in detail infra, there is no genuine dispute that Quintero misrepresented that the Vessel was in his house and was in good condition. There is also no genuine dispute as to whether these facts are material to the calculation of the risk of insuring the Vessel; insuring a stolen Vessel is akin to insuring a loss. See infra pp. 1161-63. Thus, even if the parties had contracted out of uberrimae fidei (they did not), the plain language of the Policy would preclude coverage ab initio , invalidating Quintero's claim.

Quintero also argues that Geico cannot void the Policy because "absent fraud, the Policy in question requires 45 days advance notice of a cancellation that is based on a unintentional material misrepresentation." D.E. 39 at 11. This is a mischaracterization of the Policy. The Policy requires 45 days' notice before cancellation takes effect, but there is no reference to "unintentional material misrepresentations." See D.E. 15-3 at 16 ("[cancellation] can be done by giving notice of cancellation at least 45 days before the date cancellation takes effect."). Moreover, under uberrimae fidei , Policy is void ab initio , and therefore any limits on cancellation are irrelevant; the Policy is not cancelled, it never came into effect.

Quintero argues that at the time he signed the insurance re-application on June 1, 2018, Geico was already aware of the fact that the Vessel was stolen. But, Geico's argument relates to misrepresentations made during the May 25, 2018 call, not the June 1, 2018 application. Moreover, the June 1, 2018 application does not reveal the time of the theft. Accordingly, this argument is unpersuasive.

Quintero also argues that he "conveyed to [Geico] that his neighbor's motion sensors evidence that his boat had been stolen approximately one hour before he had called earlier that morning ... as such, the Defendant's allegation of fraud in this action in association with the timing of Plaintiff's payment on the Policy premium on the same morning thereafter was admittedly unsupported ...." D.E. 39 at 4. But, whether or not Quintero committed fraud is not relevant. Uberrimae fidei voids the Policy even in the case of an innocent mistake; fraud is not necessary. See Gulfstream Cargo , 409 F.2d at 980-81 ("a mistake or commission material to a marine risk, whether it be willful or accidental, or result from mistake, negligence or voluntary ignorance, avoids the policy ....") (quotations omitted).

Quintero asserts that Geico waived any denial of coverage because it "had knowledge" of the misrepresentation and because it continued to collect premiums and recognize the existence of the policy until January 2019. D.E. 39 at 11-12; see Johnson v. Life Ins. Co. of Ga., 52 So.2d 813 (Fla. 1951) (explaining that "when an insurer has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver the Policy."). But, the Policy is not governed by Florida law, it is governed by "United States federal admiralty law." D.E. 15-3 at 1. As such, Quintero's argument relying on Florida law is not persuasive. See Giroire, 27 F. Supp. 2d at 1312 (Explaining that in the Eleventh Circuit, uberrimae fidei , and not Florida law, controlled the parties' obligations in marine insurance contracts, and therefore the insured's arguments that the insurer waived forfeiting the policy because it had constructive knowledge of material misrepresentation was not persuasive.).

Moreover, the Policy, the Notice of Policy Expiration, and the recorded telephone transcripts indicate that the previous policy's term expired on May 5, 2018 and that Quintero called to reinstate his Policy on May 25, 2018 after the Vessel had been stolen. See D.E. 33-4; D.E. 17-2; D.E. 15-1; D.E. 46 at 1-2.